[Civ. No. 48280. Second Dist., Div. Four. Nov. 23, 1976.]

In re the Marriage of NANCY ANN and
HUGH GALLOWAY KELLEY, JR.
NANCY ANN KELLEY, Appellant, v.
HUGH GALLOWAY KELLEY, JR., Respondent.

## COUNSEL

Hathaway, Clabaugh, Perrett & Webster and E. E. Clabaugh, Jr., for Appellant.

Benton, Orr, Duval & Buckingham and Edwin Duval for Respondent.

## OPINION

**THOMPSON, J.***—This is an appeal from an interlocutory judgment of dissolution of marriage. Resolution of the issues raised requires: (1) consideration of an apparent conflict in the rationale of Court of Appeal decisions dealing with the power of the trial court to order termination of spousal support in the future without reservation of jurisdiction to modify the determination (see e.g., *In re Marriage of Dennis* (1973) 35 Cal.App.3d 279 [110 Cal.Rptr. 619] and *In re Marriage of Patrino* (1973) 36 Cal.App.3d 186 [111 Cal.Rptr. 367]); (2) determination of the issue of first impression concerning the treatment of future social security old age and survivor benefits funded by employee taxes during marriage as community property; and (3) determination of the propriety of a trial court order which, while providing that the parties pay a community debt in a designated proportion, also declares that any post-dissolution reduction of indebtedness must run equally to both parties.

We conclude that: (1) whatever may be the conflict in the language of the existing Court of Appeal opinions, they are distillable into guideline limits of trial court discretion which invalidate a portion of the judgment in the case at bench; (2) the right to future social security old age and survivors benefits is not subject to division as community property in the course of a marital dissolution; and (3) the trial court erred in framing its

---

*Assigned by the Chairman of the Judicial Council.

order providing for post-dissolution discharge of community indebtedness in terms that are overly broad.

The case at bench reaches us on a settled and engrossed statement per rule 7 (b), California Rules of Court. The controlling facts are recited from the statement.

After a 22-year marriage, Wife filed her petition for dissolution of the marriage in December 1974. At the time of trial in July 1975, there were two minor children of the marriage, Cynthia born in 1957, and Lisa born in 1960. Husband was 50 years of age and Wife was 48 years old. Both daughters elected to live with Husband who was awarded their custody. Cynthia had recently completed high school and planned to attend college while living at home with her father. Lisa, while still in high school, intended to pursue a college education.

Husband was employed as a film editor by a concern producing commercial and industrial films. His gross earnings were approximately $24,200 per year and his take-home pay about $15,600 per annum. Husband's expenses for himself and the two daughters totalled approximately $13,750 a year.

Wife, with the benefit of two years of junior college education, had been employed in medical and dental offices as a secretary-receptionist-bookkeeper for approximately four years prior to her marriage to Husband, and had performed similar work during the first year of the marriage. Shortly after separation, Wife commenced courses in typing, shorthand, and other secretarial skills to equip herself for employment. After separation, she unsuccessfully sought part-time work. Her progress in her course was satisfactory so that she contemplated completion of her schooling shortly after trial and expected to obtain employment at that time. Wife was in good health.

During their marriage, Husband and Wife borrowed money from E. B. and Eleanor Woodworth, Wife's father and mother. The funds were used to purchase a home in which the parties resided at the time of separation, automobiles and other assets, and to pay living expenses. At the time of trial, Husband and Wife owed Mrs. Woodworth, Mr. Woodworth having died, $11,800 on an obligation carrying interest at 6 percent per annum, and $550 on a noninterest bearing obligation. It was understood that principal payments were to be made as Husband and Wife were financially able to pay.

Husband had acquired vested benefits in the motion picture industry pension fund. From 1952 through 1974, "contributions" in the amount of $5,686.75 were made by Husband to the Retirement Survivor's and Disability Program of the federal Social Security System. Only minimal "contributions" were made by Wife to the program.

The trial court entered its interlocutory judgment dissolving the marriage and dividing the community property. The family home having been sold, the judgment directs that the proceeds of the sale shall be applied to specified community debts and to attorneys' fees and expenses with the residue of approximately $2,200 awarded to Wife. Other specific nonliquid property of modest value is awarded to each of the parties and the court retains jurisdiction to allocate benefits received from the concededly community interest in the motion picture industry pension plan. Spousal support is awarded Wife at the rate of $500 per month from September 22, 1975, the date of the judgment, to December 21, 1975; $300 per month for the first six months of 1976; $250 per month for the last six months of that year and to June 30, 1978, and $200 per month from July 1, 1978 through June 30, 1980. Payments of spousal support are to terminate on June 30, 1980, "in any event." The judgment is expressly modifiable "as to amount but not as to term."

The judgment achieves equalization of the valuation of community property ordered distributed to Husband and Wife by an allocation of liability for the Woodworth debt. While the judgment states that "[n]o order is made . . . as to the manner of payment by the parties . . ." it apportions liability for the debt allocating slightly over two-thirds to Wife and slightly under one-third to Husband. The judgment states: "It is the intent of the Court, as between the parties hereto, to preclude a foregiveness [sic] of these obligations to [Wife] and enforcement as to [Husband]. Accordingly, in the event of any proceedings . . . brought to enforce said obligations: [¶] A. Each party who makes any payment on said obligations shall be entitled . . . to contribution from the other party or to a credit upon any indebtedness . . . to the other party (whether or not such indebtedness is due), for the other party's proportionate share of that payment; and, [¶] B. Any reduction in the aggregate balance of said indebtednesses resulting from any cause other than a payment made by a party, whether as the result of payment by a third party or from the release . . . of either one or both of the parties by the creditor . . . shall redound proportionately to the benefit of both parties." "Indebtedness" is defined by the judgment to include an obligation for support.

Wife, on this appeal from the interlocutory judgment, contends: (1) the trial court abused its discretion in decreeing periodic reductions of spousal support and in providing for total termination of support without retention of jurisdiction to modify the duration of its award; (2) the court erred in not evaluating prospective social security old age and survivor benefits or Husband's social security "contributions" in dividing the community property; and (3) the court erroneously subjected the Woodworth debt to "unreasonable, arbitrary, and unlawful conditions."

Wife also intimates trial court error in not making findings of fact. Any contention to that effect is not included in the settled statement and therefore is not open on appeal. (Rule 7 (a), Cal. Rules of Court.)

### *Amount and Duration of*
### *Spousal Support*

Eliminating fault from the equation but otherwise reenacting the provisions of former Code of Civil Procedure sections 139 and 139.7, the Family Law Act of 1969 in section 4801 of the Civil Code vests the court hearing a marital dissolution with discretion to award spousal support in "any amount, and for such period of time, as the court may deem just and reasonable . . . ." The statute requires that "just and reasonable" be determined by giving regard to "the circumstances of the . . . parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse." (Subd. (a), Civ. Code, § 4801.) An order for payment of spousal support terminates at the end of the period specified and may not be extended unless the court retains jurisdiction by the terms of its original order. (Subd. (d), Civ. Code, § 4801.) The statutory provision limiting the power of the court to modify the duration of a spousal support order has triggered an inconsistency in at least the language of California appellate decisions.

The watershed case is *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885 [101 Cal.Rptr. 295]. There Division Two of the Fourth District Court of Appeal reviewed a judgment awarding spousal support to a wife at the rate of $400 per month for one year, $300 a month for the next, and $200 a month for the third year, while not retaining jurisdiction to award payments past that period. (24 Cal.App.3d at p. 891.) The *Rosan* marriage was 17 years in duration. There were two children, one of whom was experiencing "emotional problems." The husband's earnings,

net after taxes, averaged approximately $25,000 per year and the parties enjoyed a high standard of living. The community property was valued at about $20,000 and was divided equally with wife receiving over $9,000 in cash and stock. Child support was awarded the wife at the rate of $150 per month for one child whose custody was placed with her, and the husband was given the custody of the other child. The wife intended to pursue a course of instruction and eventual career in real estate.

The *Rosan* court found that the trial court had abused its discretion, both by awarding the wife an inadequate amount of spousal support and by not retaining jurisdiction over support past the three-year period of the award.

Discarding an argument that the Family Law Act embodies a policy that husbands be relieved of any long continuing obligation of spousal support which itself justified the trial court's self-imposed limitation upon its jurisdiction (24 Cal.App.3d at pp. 895-898), the court in *Rosan* states: "orders for changes in support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations." (24 Cal.App.3d at p. 896.) The court, after considering the ability of the supported spouse to engage in gainful employment, the duration of the marriage, and the parties' accustomed standard of living (24 Cal.App.3d at pp. 897-898), reversed the trial court's order providing for prospective reduction in and termination of spousal support. It emphasized the absence of evidence of the wife's actual ability to support herself and the future availability of modification proceedings.

The issue of trial court failure to retain jurisdiction over the period of spousal support next reached the Court of Appeal in *In re Marriage of Dennis, supra,* 35 Cal.App.3d 279. There the Fifth Division of this district reviewed a trial court judgment awarding a wife spousal support of $200 per month for the first year following dissolution and $100 per month for the next three years, with no retention of jurisdiction over support past that period. Community property divided by the judgment consisted of a home worth $30,000 and an additional $5,255 in assets. Wife was given custody of the one child of the marriage and $150 per month in child support. She was about 50 years old at the time of dissolution. Her only source of independent income during marriage was approximately $6 per week earned as a seamstress. Husband's income, net after taxes, was $866 per month. Expressing the belief that husband should support her

for the rest of her life, wife testified that she would go to work only if forced to do so by "starvation." (35 Cal.App.3d at p. 282.)

The *Dennis* court affirmed the portion of the judgment providing for spousal support at the rate of $200 per month for one year and $100 for the ensuing three years, but reversed the portion of the judgment which did not retain trial court jurisdiction to consider spousal support after the four-year period. It states: "It is possible that difficulties not contemplated at this time will frustrate even a good faith attempt by the wife to become wholly or partially self-supporting. *Rosan* . . . certainly indicates that after a lengthy marriage a retention of jurisdiction to modify spousal support should be the norm and that the burden of justification is on the party seeking termination. [¶] That burden is not met here. The court had no real assurance that at the end of the four-year period the wife will be unable to show that, in spite of sincere efforts on her part, she cannot support herself adequately. It was not warranted in burning its bridges." (35 Cal.App.3d at p. 285.)

The general propositions enunciated in *Rosan* were applied by the Second Division of this district in *In re Marriage of Cosgrove* (1972) 27 Cal.App.3d 424 [103 Cal.Rptr. 733]. There the community property divided in the dissolution exceeded $430,000 and the wife both possessed a present earning capacity as a practicing medical doctor and received regular substantial monetary gifts from her family. In those circumstances, the Court of Appeal found no abuse of discretion in a trial court judgment not retaining jurisdiction to consider future spousal support. *Dennis* was again followed by the division which decided it in *In re Marriage of Wright* (1976) 60 Cal.App.3d 253, 256-258 [131 Cal.Rptr. 870].

The *Rosan-Dennis* approach is criticized by a per curiam opinion of Division Two of the First District of the Court of Appeal in *In re Marriage of Patrino, supra,* 36 Cal.App.3d 186. There the trial court awarded spousal support decreasing from $250 to $100 a month over a one-year period without retention of jurisdiction over support past the first year after dissolution. The husband had been awarded custody of the children of the marriage. His income was $1,060 per month. The community property was awarded $10,000 in cash to the wife and the family home and furniture to the husband, with the difference in value equalized by a promissory note in the amount of $10,000 from husband to wife due in three years. The marriage had lasted 26 years. Wife had

worked as a psychiatric technician for the first 11 years of the marriage but not since. She required "renewed training to reenter that line of work" but desired to return to employment. (36 Cal.App.3d at p. 188.)

The *Patrino* court affirmed the trial court order terminating jurisdiction over spousal support at the end of one year. It discusses the circumstances of the parties only in the context of distinguishing *Rosan* because there the husband and wife "had been accustomed to a high standard of living" and the wife had been granted custody of one of the children. (36 Cal.App.3d at p. 189.) *Patrino* rejects the *Dennis* concept that the retention of jurisdiction to modify spousal support should be the norm after a lengthy marriage so that the burden for justifying terminating spousal support is on the party seeking termination. It says: "To carry such a burden too far would have the effect of destroying the purpose of the new Family Law Act to reduce the amount of courtroom litigation involved in settling the rights of the parties to a dissolution proceeding. [¶] Prior to passage of the Family Law Act, trial courts had ongoing jurisdiction to modify awards of spousal support. Now subdivision (d) of section 4801 of the Civil Code provides for absolute termination of spousal support *unless the trial court in its original order retains jurisdiction to extend an order for support.* The new law thus affords the trial court the discretion to determine if support should be absolutely terminated after a period of time. In this way, the court can settle the rights of the parties at one time and to some extent curtail endless modification proceedings." (36 Cal.App.3d at p. 189; italics in original.)

The *Patrino* court concludes that the trial court's exercise of discretion in a manner terminating jurisdiction over spousal support at the end of one year is supported by the wife's expressed desire to return to employment and the amount of community property distributed to her. (36 Cal.App.3d at p. 188.)

The *Rosan-Dennis* reasoning is criticized and the *Patrino* reasoning praised, although *Patrino* is distinguished on its facts, in an opinion of the Third District of the Court of Appeal in *In re Marriage of Lopez*[1] (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58]. On a record showing that husband was earning $70,000 per year, *Lopez* reverses a trial court award of spousal support of $200 per month for two years on the basis that the

---

[1]"Carter, J., retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council" is the author of *Lopez*. Judge Robert D. Carter was the trial judge in *Patrino*.

trial court abused its discretion, both as to amount and duration of support. In so doing, however, the *Lopez* court accepts *Patrino's* statement of the governing principle while rejecting *Dennis*. (38 Cal.App.3d at pp. 114-119.)

Resolution of the case at bench requires critical analysis of the *Rosan-Dennis* v. *Patrino-Lopez* controversy.

The *Patrino-Lopez* reliance upon subdivision (d) of Civil Code section 4801 as indicating a policy of the Family Law Act encouraging the trial court finally to settle the rights of the parties in order to curtail future modification proceedings is suspect. Subdivision (d) of section 4801 is not novel to the Family Law Act. It is a recodification of former Civil Code section 139.7 which predated the Family Law Act by almost five years. Former section 139.7 changed the prior law only by providing that the trial court, in order to retain jurisdiction over spousal support, must do so expressly in its judgment, while the previous rule was that jurisdiction terminated only if the judgment expressly so stated. We have found nothing in the literature or legislative reports preceding the enactment of the Family Law Act which refers to a policy favoring trial court judgments framed to reduce future applications for modifications of support.

The *Dennis-Rosan* principle is helpful in the sense that it places in context the general proposition that trial court discretion over duration of spousal support must be exercised with reference to the showing made and not arbitrarily. Both sets of cases, plus the report of the Assembly Judiciary Committee on the Family Law Act (1969 Assem. Com. Rep. on the Family Law Act, 4 Assem. J. (1969) p. 8054), while by no means all inclusive, are instructive on what must go into the showing.

Duration of the marriage must be considered. (Civ. Code, § 4801, subd. (a).) The longer the duration, the stronger the case is for retention of jurisdiction over spousal support. (*Rosan,* 24 Cal.App.3d at pp. 897-898; *Dennis,* 35 Cal.App.3d at p. 285.)

The manner in which child custody is awarded is significant. A judgment placing the custody of children in the supported spouse militates toward retention of jurisdiction over spousal support, while an award of custody to the supporting spouse does not. (*Patrino,* 36 Cal.App.3d at p. 189.)

The court must consider the division of community property and the supported spouse's other resources for support. The greater the amount of property awarded the supported spouse and the greater his other resources, the less the indication is in favor of retention of jurisdiction. (*Patrino,* 36 Cal.App.3d at p. 189; *Cosgrove,* 27 Cal.App.3d at p. 434.)

There is significance in the parties' accustomed standard of living. The need and earning ability of the supported spouse must be considered in the context of that standard so the higher the standard and the lower the earning ability the stronger the case for retention of jurisdiction. (*Rosan,* 24 Cal.App.3d at pp. 897-898; *Patrino,* 36 Cal.App.3d at p. 189.)

■ The "approaching equality [of women and men] should be reflected in the law governing marriage dissolution and in the decisions of courts with respect to matters incident to dissolution." (1969 Assem. Com. Rep. on the Family Law Act, 4 Assem. J. (1969) p. 8062.) Hence, the ability of the supported spouse to engage in gainful employment, with due regard to the interest of the children of the parties, must be considered in determining the issue of retention of jurisdiction over spousal support. (*Id.,* p. 8058; Civ. Code, § 4801, subd. (a).) Health and age of the supported spouse are relevant to his ability to engage in gainful employment. (*Dennis,* 35 Cal.App.3d at p. 285.) The greater the showing of the ability of the supported spouse to engage in employment which will produce income supporting the accustomed standard of living, the less the need for retention of jurisdiction. (*Cosgrove,* 27 Cal.App.3d at p. 434.) The actual ability to engage in gainful employment must, however, be established by evidence from which the inference may be drawn; the trial court is not permitted to speculate that if the supported spouse diligently tries to support himself he will succeed. (*Rosan,* 24 Cal.App.3d at pp. 895-896; *Dennis,* 35 Cal.App.3d at p. 285.)

■ In the case at bench, the marriage was of long duration, 22 years, a factor indicating that jurisdiction over the duration of spousal support should be retained. The community property distributed in dissolution is minimal and there is no evidence supporting the inference that Wife will have other resources available to her, again factors tending toward the retention of jurisdiction. Wife's willingness to support herself is demonstrated but there is nothing in the record to indicate that her efforts at self-support will be successful. Her age supports an inference to the contrary. The standard of living of the parties appears to be neither

particularly high nor particularly low so that this factor is a neutral one. The only factor militating against retention of jurisdiction over the duration of spousal support is the award of custody of the children of the marriage to Husband.

In sum, while the trial court was not required to base its decision upon the numerical weight of factors for and against retention of jurisdiction over the duration of spousal support (*Edwards* v. *Edwards* (1975) 52 Cal.App.3d 12 [124 Cal.Rptr. 742]), it was required to consider the relative weight of the factors in combination. When the facts are so considered, there is no rational support for the portion of the judgment which fails to retain jurisdiction. In view of the 22-year marriage, Wife's age and lack of demonstrated earning ability, and the lack of income-producing investments or other resources for support, the only fair conclusion from the record is that retention of jurisdiction over spousal support past June 30, 1980, is required. These factors in combination are such that the award of custody of the children to Husband does not justify the trial court's action.

The portion of the judgment which fails to retain jurisdiction over the duration of spousal support must thus be reversed. ██ . The portion of the judgment awarding spousal support in periodically reducing amounts is another matter. *Dennis* teaches that a lesser showing is required to support such a modifiable order than one which burns the court's bridges by divesting it of jurisdiction despite error in its prognostication of the future. (35 Cal.App.3d at p. 284.)

Here that lesser showing is present. The first reduction of spousal support from $500 per month to $300 after three months is justified by Husband's anticipated additional expense flowing from the enrollment of a daughter in college. The future annual reductions, first from $300 per month to $250 per month, and then to $200, find support in the expectation that Wife will diligently develop her secretarial skills which will pay off in increased earnings. Should the court's expectations prove erroneous, it will have the power to correct its miscalculation.

*Social Security Old Age, Survivors
and Disability Insurance Benefits*

██ The power of the court to award "employee contributions" or the eventual right to old age, survivors or disability insurance (OASDI) benefits payable by the Social Security Act when it dissolves a marriage

depends upon: (1) the characterization of the "contributions" and benefits as akin to a community property right; and (2) the impact of the supremacy clause of the United States Constitution. (Art. VI, cl. 2.)

If the "contribution" is legally analogous to that of an employee to a contributory pension plan or the benefits to be received are a form of deferred compensation legally similar to rights granted by a private retirement plan or government pension earned by the performance of services during marriage, there is a community interest in the "contribution" and in the benefits to be received. (*In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561]; *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den., 419 U.S. 825, 1060 [42 L.Ed.2d 48, 657, 95 S.Ct. 41, 644], disapproved on unrelated grounds at 15 Cal.3d 851, fn. 14; *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765], disapproved on unrelated grounds at 15 Cal.3d 851, fn. 14; *Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13], disapproved on unrelated grounds at 15 Cal.3d 851, fn. 14.) Despite treatment of the right as one of deferred compensation, federal preemption precludes a state court's exercise of power over it if that exercise conflicts with federal law. (*Free* v. *Bland* (1962) 369 U.S. 663, 666 [8 L.Ed.2d 180, 183, 82 S.Ct. 1089]; *Wissner* v. *Wissner* (1950) 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398]; *In re Marriage of Fithian, supra,* 10 Cal.3d 592, 597-598.)

■ The scope and nature of OASDI benefits both preclude their characterization as deferred compensation and disclose a federal statutory scheme in conflict with state court action exercising jurisdiction to award benefits from or employee "contributions" to OASDI as community property in dissolution of marriage.

OASDI "contributions" and benefits have some of the attributes of payments to and benefits received from a private retirement plan and some of the attributes of a government pension. The employee's and employer's obligation to pay social security taxes used to fund part of the benefits are based upon the employee's earnings. (Int. Rev. Code, § 3101.) Eligibility for and amount of benefits is determined by the number of "quarters" of covered employment or other period of earnings. (1974 Social Security and Medicare Explained (CCH) § 504—hereinafter CCH.) OASDI benefits are commonly integrated into private retirement plans in which the employee's interest is community property. (Treas. Reg., § 1.401-3, subd. (e)(1) (1976).)

Whatever may be the similarities of the OASDI system to private retirement or government pension plans, there are differences both in manner of contribution and computation of benefits which outweigh them.

In general, only a person who is "fully insured" in the OASDI system is entitled to retirement benefits. (CCH, § 506.) Leaving aside situations where an individual dies before he otherwise attains the status, a person becomes "fully insured" when he works 40 calendar quarters in covered employment. (CCH, § 505.) Once the status of "fully insured" is obtained, future employment does not affect the amount of benefit except as the amount of covered earnings results in a greater or lesser "average monthly wage" upon which benefits are computed. (CCH, § 508-508.2.)

OASDI retirement benefits are of two classes: direct or "primary," and derivative or "family." Primary benefits are payable to a retired, fully insured worker who is 62 years of age or older. (CCH, § 503.) The benefit, while based upon average earnings from covered employment (CCH, § 508), is increased in the case of individuals who delay their retirement past age 62 (CCH, § 509.5), and decreased in the case of persons under 72 years of age who earn in excess of specified amounts from employment after retirement. (CCH, § 525.1.) Derivative or "family" benefits are paid to the spouse (age 62 or older), unmarried dependent or minor children, and divorced wife (aged 62 or older) of the retired worker covered by OASDI. (CCH, § 503.) The derivative benefits are in addition to the direct benefit and do not reduce the primary benefit payable. (CCH, § 511.) The benefit payable to a divorced wife of a covered worker does not reduce the benefit payable to the wife of the worker. (CCH, § 512.1.) In the case where there are both a wife and a divorced wife, the benefit to each is equal to one-half that of the worker's primary benefit. (*Id.*)

The amount of an employee's "contribution" or earnings does not necessarily determine the quantum of his benefits under OASDI. Once he has attained the status of "fully insured," his future income is significant in determining his average income upon which benefits will be based, but future employee and employer taxes do not in themselves increase his benefits. A fully insured worker who is age 52 receives no more in benefits if he works at maximum wage to age 62 than a worker who first commences covered employment at maximum compensation at

age 52. In the context of the case at bench, Husband, if he continues to work to age 62, will, except as averaging of wages may raise or lower the amount, receive the same OASDI benefit as if he had not worked in covered employment prior to dissolution of the marriage. The family benefits derivative from his employment will also be the same.

The amount of benefits is subject to adjustment based upon future conduct having nothing to do with contributions or past labor. If the worker defers retirement and does not elect to draw his benefit at age 62, his future benefits will be increased. If he retires and elects to draw benefits but nevertheless works so that he is compensated in excess of statutory amounts, his benefits will be reduced.

The family portion of OASDI benefits depends not upon the covered worker's earnings or "contributions," but upon the status of the recipient of the benefits. The existence of a spouse increases the total benefit by 50 percent, and that of a divorced wife by another 50 percent per divorced wife.

In essence, the statutory scheme of OASDI is thus one of social insurance designed to provide financial security to covered workers and their families rather than one of deferred compensation for past labor. The statute has been so characterized by the United States Supreme Court in *Weinberger* v. *Salfi* (1975) 422 U.S. 749 [45 L.Ed.2d 522, 95 S.Ct. 2457] in the context of an issue of due process arising out of the classification of "survivors" eligible for social security benefits. (See also *Flemming* v. *Nestor* (1960) 363 U.S. 603, 609-610 [4 L.Ed.2d 1435, 1443-1444, 80 S.Ct. 1367], characterizing OASDI benefits as "a form of social insurance"; and *Richardson* v. *Belcher* (1971) 404 U.S. 78, 80-81 [30 L.Ed.2d 231, 234-235, 92 S.Ct. 254].) It has been so denominated by the Supreme Court of Washington in *Caughey* v. *Employment Security Department* (1972) 81 Wn.2d 597 [503 P.2d 460, 462-463, 56 A.L.R.3d 513] in the context of the rationality of a classification treating pension and retirement plan receipts, but not OASDI benefits, as employment income for the purposes of eligibility for unemployment insurance benefits. *Weinberger* and *Caughey,* although decided in a different context, are persuasive here.

When the statutory scheme of OASDI is recognized as primarily one of federal social insurance, it is apparent that exercise of state court jurisdiction awarding community property by evaluating employee

"contributions" or right to future benefits conflicts with the federal law. The federal law specifically provides benefits for wives (CCH, § 512), divorced wives (CCH, § 512.1), widows (CCH, § 515), and surviving divorced wives (*id.*). If all or any part of OASDI contributions or benefits are included in the mix of community property divisible on dissolution of marriage, what is a uniform federal scheme of benefits becomes one that varies depending upon the community property law of various states. (See *Free* v. *Bland, supra,* 369 U.S. 663, 669 [8 L.Ed.2d 180, 185].)

We thus conclude that the trial court correctly refused to include Husband's social security "contributions" or the eventual right to OASDI benefits in determining the division of community property.

### Woodworth Debt

The trial court judgment allocates liability for the Woodworth debt in the ratio of approximately two-thirds to Wife and one-third to Husband. That allocation is not questioned on appeal. The judgment also provides: (1) if either Husband or Wife makes a payment on the obligation, he (she) will be entitled to contribution from the other in proportion to the other's share of the liability and may offset the credit against any obligation to the other party, including an obligation for support; and (2) any reduction in the balance of the debt by reason of forgiveness, unenforceability, or payment by a third party must "redound proportionately" to the benefit of both Husband and Wife.

The first condition is directly related to the obligation allocated to Husband and Wife respectively, and is consequently appropriate and proper. The second condition is not. It purports to exercise a power the court does not possess. The requirement that any reduction in the balance of the Woodworth debt by forgiveness, unenforceability, or payment by a third party unduly restricts the post-dissolution rights of the parties. The court was not empowered to limit the right of one party to receive a gift, loan, inheritance, or bequest by the requirement that the other would participate pro rata in it.

### Disposition

The judgment is modified as follows: (1) The last sentence of paragraph 7 is stricken. There is substituted for that sentence the words

"The court retains jurisdiction over spousal support." (2) Subparagraph B of paragraph 8 is stricken. The judgment is affirmed as modified. Appellant is to recover her costs on appeal.

Files, P. J., and Jefferson (Bernard), J., concurred.