[Civ. No. 16883. Third Dist. Jan. 9, 1978.]

In re the Marriage of JEAN and KENNETH ANDREEN.
KENNETH ANDREEN, Appellant, v.
JEAN ANDREEN, Appellant.

## COUNSEL

Fullerton, Lang, Richert & Patch, Jeff Wall, William Richert and Philip C. Fullerton for Appellant Husband.

Wild, Carter, Hamlin, Tipton & Quaschnick, Robert G. Carter and Trevor C. Clegg for Appellant Wife.

## OPINION

**FRIEDMAN, Acting P. J.**—Both wife and husband appeal from financial provisions of their marital dissolution decree. The parties married. in 1946 and separated 27 years later, in 1973. When the judgment was entered in April 1976, husband was 50 years old and wife was 49. Their two children had reached adulthood.

The court ordered husband to pay wife spousal support of $500 per month for five years beginning November 1, 1974, $1 per month for the next five years, terminating support and terminating jurisdiction to award support at the end of the second five-year period.

### SPOUSAL SUPPORT

Wife charges abuse of discretion in the award of $500 per month, in the automatic reduction to $1 per month at the end of five years and in the automatic termination at the end of ten years. In reviewing these provisions, we bear in mind the standards fixed by Civil Code section 4801, the extent of discretion invested in trial courts by decisional law (e.g., *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58]; *In re Marriage of Patrino* (1973) 36 Cal.App.3d 186, 188 [111 Cal.Rptr. 367]; *In re Marriage of Kelley* (1976) 64 Cal.App.3d 82 [134 Cal.Rptr. 259]) and the consequent limitations upon the scope of

appellate review. The trial court's discretion is abused when it " ' "exceeds the bounds of reason, all of the circumstances before it being considered." ' " (*In re Marriage of Lopez, supra,* 38 Cal.App.3d at p. 114.)

The couple's capital assets, divided by the decree, did not have enough value to affect support duties or needs. Husband is a superior court judge, having served on the bench since 1959. At the time of the trial (1974), husband's gross annual judicial salary was $40,322. According to cash flow schedules offered by the husband and based upon assumed spousal support payments of $500 per month, husband would have annual after-tax disposable income of $22,472 (subject to retirement contributions of $3,225) and wife an annual disposable income of $9,300.[1] Wife possesses a teaching credential, taught school for about 10 years during the marriage but had not taught since 1969. She had retirement credits as a teacher and would draw a pension of $1,400 per year at age 60 (i.e., in 1987). According to trial testimony, her chance of reemployment as a teacher was "meager." She did not want to return to teaching. At the time of trial, she was taking secretarial training, had gained competence in typing and shorthand and expected that upon completion of her training she would get secretarial work at an estimated annual salary of $6,000. She had some physical problems (recurrent bursitis and arthritis) which might interfere with her employment expectations.

We have reviewed the award of $500 monthly spousal support in the light of Civil Code section 4801 and such decisions as *In re Marriage of Lopez, supra,* 38 Cal.App.3d 93, and *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885 [101 Cal.Rptr. 295].[2] ▉ The award represents an abuse of discretion. It supplies the husband a continued standard of living much higher than the wife's. This was a marriage of 27 years; the parties pursued an upper middle-class life style. The husband's earning

---

[1] At the time of trial but given no apparent recognition was a statutory cost-of-living escalation applicable to husband's salary as a superior court judge. (Gov. Code, § 68203.) On September 1, 1977, husband's gross annual salary rose to $49,166.

The parties have filed supplemental briefs debating husband's claim that wife's accountant-witness had erred in assuming that husband was entitled to "head of family" status for tax purposes, leading the trial court into error relative to husband's disposable income. The accountant's testimony was equivocal and nothing in the record supports husband's assumption that the trial judge accepted it as a mandate of law. We are not going to tackle questions of income tax law here. Our disposition will leave the matter open for future debate in the trial court.

[2] Civil Code section 4801 was amended in 1976 after entry of the decree in this case. Subdivision (a) of section 4801 now enumerates a number of specific standards, including the parties' standard of living, which had been established by case law.

capacity is unimpaired; he has a fairly assured station in life. Aided by the income tax law's treatment of alimony payers, his 1977 take-home pay should be in excess of $2,000 per month. The automatic salary increases provided for superior court judges in 1974 were quite predictable to the trial court. Husband can pay his wife more than $500 support and still have funds for a comfortable life style.

Wife, in contrast, faced a shaky economic situation and a shaky economic future. She enters the employment market at age 50. She has shown no disinclination to work for a living.[3] The record does not show whether she found work or not. If she found work at the expected range of $500 per month, her income of $1,000 per month before taxes would provide her a drab, relatively austere standard of life, hardly comparable to husband's. If because of health she is unable to work, the $500 spousal support payment would constitute her sole income. In that event she would find herself barely above the poverty level. Whether her before-tax income is $1,000 a month or $500 a month, the decree depresses her standard of living considerably below husband's.

■ We turn to the provision dropping the award to $1 per month at the end of five years. The automatic reduction was undoubtedly based upon the trial judge's assumption that by 1979 wife would be earning enough to afford an appropriate standard of living. At this point, the case is a close one. The automatic reduction provision resides in the no man's land between permissible inference and impermissible speculation. (See In re Marriage of Kelley, supra, 64 Cal.App.3d at p. 94.) It postulates a future earning capacity which had not yet been established by an actual history of employment. Wife has no visible assets to augment her earnings. In 1979, when the automatic reduction occurs, she will be receiving neither her teacher's pension nor her share of husband's retirement allowance.

On the other hand, the specification of a precise sum payable during 1979-1984 would be no less speculative. The trial judge realistically gave weight to wife's experience, intellectual competence and capacity for livelihood. We agree with the Kelley opinion (64 Cal.App.3d at p. 93) that the Family Law Act evinces no hostility toward decrees which envision future modification proceedings. Although the automatic reduc-

[3]Husband's briefs on appeal criticize wife's choice of low-secretarial work as contrasted with higher-paid teaching. In view of the lack of assurance of teaching opportunities, the alternative seems illusory.

tion rests on as much speculation as evidence, we cannot classify it as an abuse of discretion.

The automatic reduction was based upon the trial court's assumption that by November 1979 wife would be earning enough to afford a standard of living appropriate to the parties' social and cultural condition. The failure of that assumption would constitute a change of condition and provide a ground for modification of this phase of the decree. It is much more realistic (and at least as fair) to appraise the parties' 1979 situation by the measure of actual rather than prophesied 1979 facts.

■ The automatic termination of spousal support and the court's relinquishment of jurisdiction in 1984 is, in our view, an abuse of discretion. At this point we adopt the reasoning employed in the *Kelley* case, *supra,* 64 Cal.App.3d at pages 93-95. This was a marriage of 27 years. In 1984 wife will be 57 years old. She has a health problem, husband apparently has none. Her ability at age 57 to compete in the employment market is at least speculative. From all present appearances husband's 1984 earning capacity will be unimpaired. The trial court had no way of predicting the parties' situation in 1984.[4] The rejection of jurisdiction to review the parties' 1984 situation cannot stand.[5]

### WIFE'S INTEREST IN JUDICIAL PENSION

At the time of the decree (1976) husband was 50 years old and had approximately 16 years of credit in the judges' retirement system. In the division of community property the trial court awarded wife a portion of the retirement allowance husband would receive during his lifetime. The court refused to make any award premised on the value of the rights wife was losing as "surviving spouse." Wife charges error.

The Judges' Retirement Law (Gov. Code, § 75000 et seq.) establishes a system of lifetime allowances for retired judges plus several varieties of

[4]Although husband's brief on appeal argues otherwise, we can find no assurance in the decree that wife will become entitled in December 1984 to share in husband's judicial salary or retirement allowance. Husband might choose to leave the bench before reaching age 60, thus deferring his eligibility for retirement allowances until he reaches age 63, i.e., until December 12, 1987.

[5]Husband cites *Civil Code section 4806 in support of the automatic termination clause.* That section prohibits support orders where there are no children and the party seeking support has separate estate or earnings sufficient for "proper support." Here the second condition established by section 4806 is unfulfilled, for there is no assurance that wife will be self-supporting in 1984.

allowances for the surviving spouses of judges who die in service or after retirement. When produced by marital earnings, the lifetime allowances are community property; upon divorce they form a divisible community asset. (*Waite* v. *Waite* (1972) 6 Cal.3d 461, 470-472 [99 Cal.Rptr. 325, 492 P.2d 13].) Decisional law has refused similar recognition to surviving spouse allowances. The latter, according to the decisions, are only expectancies, predictions of entitlement which will be fulfilled when and if the claimant becomes the surviving spouse; they are payable only to the person occupying that status at the time of the employee's death; they do not constitute a divisible community asset upon marital dissolution. (*Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 362 [33 Cal.Rptr. 257, 384 P.2d 649]; see also *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 42-43 [89 Cal.Rptr. 61, 473 P.2d 765]; *Waite* v. *Waite, supra,* 6 Cal.3d at p. 470.)

In 1976, *In re Marriage of Brown,* 15 Cal.3d 838, 841, 851-852 [126 Cal.Rptr. 633, 544 P.2d 561], overturned the California doctrine which had classified nonvested pension rights as mere expectancies, excluded from the inventory of divisible community assets. Wife relies upon *Marriage of Brown,* arguing that it requires recognition of the value of her contingent interest as surviving spouse under the Judges' Retirement Law.

■ Although our course is not crystal clear, stare decisis impels us to adhere to *Benson* v. *City of Los Angeles,* thus sustaining the trial court's refusal to grant value to the wife's contingent interest as surviving spouse. *Marriage of Brown* did not overrule *Benson;* nor do we find in the former any implied disavowal of the latter. *Marriage of Brown* dealt only with nonvested pension rights; it did not obliterate the distinction between enforceable pension rights and unenforceable expectancies. The Judges' Retirement Law designates the surviving spouse, not the ex-spouse, as recipient; it is designed for the support of the former, not the latter. During marriage the survivor allowance represents an expectancy or contingent prospect, not an enforceable right. When the marriage of an unretired judge terminates, the spouse loses a contingent prospect, not an enforceable right. To view the prospect as a community asset would force the judge to pay for an expectancy which might never mature.

*Marriage of Brown* does not sweep so broadly as to encompass every asset whose potential existence was earned during coverture. A potential right may be subject to so many conditions precedent as to preclude any

practicable valuation. In a decision subsequent to *Brown,* the Supreme Court noted some reservations—observing that not all nonvested rights were divisible and intimating that the covered employee's ability to control fulfillment of the right may influence its classification as a divisible asset. (*In re Marriage of Skaden* (1977) 19 Cal.3d 679, 686-688, fns. 6, 7, 8 [139 Cal.Rptr. 615, 566 P.2d 249].)

The surviving spouse allowance is subject to many contingencies; its amount varies with the contingency. An evaluator would be forced into a variety of hypotheses, would apply a value to each, then somehow transmute the separate values into a single value. The appraisal would entail more guesswork than logic. A reservation of jurisdiction over future payments may sometimes substitute for a present appraisal. (*In re Marriage of Skaden, supra,* 19 Cal.3d at p. 688.) Here, the reservation of jurisdiction would pursue a defendant who had already passed from the court's jurisdiction. The covered employee has little control over the identity of the beneficiary. Unlike an insurance policyholder, he may switch beneficiaries only by the indirect and terribly cumbersome device of changing mates. For all these reasons, we conclude that *Marriage of Brown* did not transform the survivor allowance into a divisible asset.

■ We turn to a related but separate question: According to the formula adopted by the trial court, wife's share of husband's retirement payments would be pegged to the salary of whatever judicial position husband holds at the time of his retirement. On his cross-appeal, husband contends that the base figure should be the allowance payable to a superior court judge, that being husband's position at the time of separation.

Husband errs in his claim that any post-separation judicial promotion would derive solely from his post-separation efforts. The promotion would stem from an indivisible mixture of past and future progress, some of which would have occurred during the marriage. In computing and apportioning a nonemployee spouse's interest in present or future retirement benefits, a court is not bound to any fixed formula and has discretion to select any reasonable method. (*In re Marriage of Freiberg* (1976) 57 Cal.App.3d 304, 312 [127 Cal.Rptr. 792].) The trial court did not abuse its discretion when it chose the date of retirement instead of the date of separation as the time point for valuing the retirement benefits. (*In re Marriage of Adams* (1976) 64 Cal.App.3d 181, 185-187 [134 Cal.Rptr. 298].)

■ Husband charges error in the court's assumption of power to award wife a share of disability retirement benefits payable to husband. The Judges' Retirement Law permits a disabled judge to retire at 65 percent or 75 percent of salary according to the length of his judicial service. (Gov. Code, §§ 75060, 75075-75076.)

Longevity retirement benefits are a form of deferred compensation, thus a divisible community asset. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449]; *Waite* v. *Waite, supra,* 6 Cal.3d at pp. 469-471.) The state Supreme Court has placed a contrasting characterization on disability retirement benefits, comparing them to personal injury damages rather than earnings, forming a community asset when received during marriage but constituting separate property when received later. (*In re Marriage of Jones* (1975) 13 Cal.3d 457, 462-463 [119 Cal.Rptr. 108, 531 P.2d 420].) The latter holding occurred in a case where the covered employee was disabled *before* he had earned a vested right to a longevity pension; the court specifically declined to rule on the community character of disability benefits granted *after* the employee had earned longevity retirement. (*Id.,* at pp. 460-461.) There is much reason to recommend the view that the employee-spouse may not choose between disability and longevity retirement at the expense of an ex-spouse.

In view of *Marriage of Jones, supra,* a trial court should not attempt to dispose of disability benefits which an active, undisabled spouse may claim at some future time. The court cannot predict when or whether the covered employee will become disabled. An attempt to divide conjectural disability allowances is an abstraction based on a possibility which may never materialize. Incorporated in a decree, the abstraction forces the affected party to attack it lest it become res judicata. Under the present circumstances, the award of conjectural disability benefits—whatever its ultimate legal propriety—represented an abuse of discretion. The court should have reserved jurisdiction to consider the division of disability retirement benefits when and if they became payable.

A case awaits decision in the state Supreme Court which may shed more light on the community character of disability pension payments. (*In re Marriage of Stenquist* (L.A. No. 30718.) Our reversal will give the trial court an opportunity to consider its decree in the light of any directions emanating from the *Stenquist* decision.

## CONCLUSION

We reverse those provisions of the decree awarding $500 monthly spousal support and terminating all support after 10 years, as well as the provision dividing disability retirement benefits. Cause remanded for further proceedings relative to those provisions. The remainder of the decree is affirmed.

Husband is to bear costs on appeal.

Paras, J., and Reynoso, J., concurred.

The petitions of both parties for a hearing by the Supreme Court were denied March 16, 1978.