[Civ. No. 16669. Fourth Dist., Div. One. Aug. 19, 1980.]

In re the Marriage of TYNA KAY and ALAN E. HILLERMAN.
ALAN E. HILLERMAN, Respondent, v.
TYNA KAY HILLERMAN, Appellant.

COUNSEL

Feist, Vetter, Knauf & Loy, Charles L. Currier and Gerry L. Curtis for Appellant.

Jones, Hatfield, Penfield & Garrett, James R. Penfield and Thomas E. Polakiewicz for Respondent.

James E. Sutherland as Amicus Curiae.

OPINION

HARELSON, J.*—The sole question on this appeal from an interlocutory judgment of dissolution of marriage is whether the trial court's refusal to reserve jurisdiction for the purpose of dividing future Old Age, Survivors and Disability Insurance (OASDI) was proper.

The parties to this action were married February 1, 1959, and separated on July 20, 1976. During that period Alan contributed, or had deducted from his pay, sums deposited to Social Security. At the interlocutory hearing, argument was presented as to whether the trial court should reserve jurisdiction for the purpose of dividing any community property interest in Alan's future OASDI benefits. ■ The trial court refused to reserve jurisdiction on the basis that under present California law, Social Security benefits are not community property (see *In re Marriage of Nizenkoff* (1976) 65 Cal.App.3d 136 [135 Cal. Rptr. 189]; *In re Marriage of Kelley* (1976) 64 Cal.App.3d 82 [134 Cal.Rptr. 259]; and recently, *In re Marriage of Cohen* (1980) 105 Cal. App.3d 836 [164 Cal.Rptr. 672]).

*Community Property*

■ California community property law is based on a partnership model in which each spouse contributes to and shares in the prosperity of the marriage (*In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 389 [145 Cal.Rptr. 716]). The community property concept recognizes the important role of each spouse in the success of the community and places husband and wife on an equal footing with respect to property

---

*Assigned by the Chairperson of the Judicial Council.

accumulated during marriage (*Meyer* v. *Kinzer and Wife* (1859) 12 Cal. 247, 251). Each spouse's effort, time and skill are community assets (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 105 [113 Cal. Rptr. 58]; *Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 332 [58 Cal. Rptr. 304]; *Strohm* v. *Strohm* (1960) 182 Cal.App.2d 53, 62 [5 Cal. Rptr. 884]), and any benefit derived therefrom belongs to both (*Estate of Gold* (1915) 170 Cal. 621, 623 [151 P. 12]).

■ Retirement benefits attributable to employment have been accorded community property treatment upon dissolution regardless of their source (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 355 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231]). Future benefits from private retirement plans are subject to division (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 849 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]). Pension rights created by act of state Legislature have also been determined to be community property (*Cheney* v. *City & County of San Francisco* (1936) 7 Cal.2d 565, 569 [61 P.2d 754]), as have federal military pension benefits (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 601 [111 Cal.Rptr. 369, 517 P.2d 449]; *Henn* v. *Henn* (1980) 26 Cal.3d 323, 328 [161 Cal.Rptr. 502, 605 P.2d 10]) and benefits afforded by the federal civil service retirement plan (*In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 649 [115 Cal.Rptr. 184]).

Social Security is legally analogous to these other pension plans. The obligation to pay the Social Security taxes used to fund the benefits is based upon the earnings of the employee-spouse (§ 3101 of the Int. Rev. Code). Eligibility for and the amount of the benefits paid is determined by the number of "quarters" of covered employment credited to the employee-spouse (42 U.S.C. § 414(a)). It is also common for OASDI benefits to be integrated with private retirement plans and insurance coverage, in which the nonemployee-spouse has a community interest.

California courts, however, have refused to recognize any community interest in OASDI benefits (*In re Marriage of Nizenkoff, supra,* 65 Cal.App.3d 136, 140; *In re Marriage of Kelley, supra,* 64 Cal.App.3d 82, 96; *In re Marriage of Cohen, supra,* 105 Cal.App.3d 836, 843). These decisions have been based chiefly on federal cases which, for purposes of federal law, characterized Social Security as a general public benefit, creating no legally recognized property or contract right (see *Flemming* v. *Nestor* (1960) 363 U.S. 603, 610 [4 L.Ed.2d 1435, 1443-1444, 80 S.Ct. 1367]; *Richardson* v. *Belcher* (1971) 404 U.S. 78, 81

[30 L.Ed.2d 231, 234-235, 92 S.Ct. 254]; *Weinberger v. Wiesenfeld* (1975) 420 U.S. 636, 647 [43 L.Ed.2d 514, 524, 95 S.Ct. 1225]).

Social Security was first treated as a noncontractural right by the United States Supreme Court to uphold the program's constitutionality against charges that the federal government was improperly engaging in the pension business by requiring workers to enter into retirement contracts (see *Helvering v. Davis* (1937) 301 U.S. 619 [81 L.Ed. 1307, 57 S.Ct. 904, 109 A.L.R. 1319], as mod., 301 U.S. 672 [81 L.Ed. 1336, 57 S.Ct. 792]).[1] In so holding, the court focused on the formalistic system separating the taxing and spending features of Social Security devised by Congress to avoid the constitutional pitfalls of a federal pension based on a contractual model. It was noted that contributions to the program are labeled a "tax" imposed on both employees and employers (Federal Insurance Contribution Act (FICA), § 2101 et seq. of the Int. Rev. Code). FICA taxes become part of the general revenue (§ 3101 of the Int. Rev. Code), but then an amount exactly equal to the contributions collected is appropriated each year for the OASDI trust fund, from which benefits are paid (§ 401(a) of the Int. Rev. Code). Social Security was held to be a valid exercise of Congress' taxing and spending power because FICA taxes become part of the general revenue from which Congress in its complete discretion may spend for the "general welfare" (*Helvering v. Davis, supra*, 301 U.S. 619, 635, 640 [81 L.Ed. 1307, 1312, 1314-1315]).

The earlier California state court decisions denying any community interest in OASDI benefits have simply acquiesced to the federal judiciary's characterization of Social Security as a public largesse, without any independent evaluation of the matter. For the purpose of dividing this asset during dissolution proceedings, we deem it not only permissible (see *Herb v. Pitcairn* (1945) 342 U.S. 117, 125 [89 L.Ed. 789, 794, 65 S.Ct. 459]), but also necessary, that such an analysis be conducted by this court. ■ Although the scope of the right to these benefits is a federal question, such an issue may also come before state courts in the context of the family relationship and to that extent it should be resolved in light of applicable state law (*De Sylva v. Ballentine* (1956) 351 U.S. 570, 580 [100 L.Ed. 1415, 1427, 76 S.Ct. 974]). The whole subject of domestic relations has traditionally been dealt with by local

---

[1]Although Social Security may now be constitutional under more recent expansive interpretations of the commerce clause, at that time it was thought the plan might be violative of the Tenth Amendment.

authorities (*Buechold* v. *Ortiz* (9th Cir. 1968) 401 F.2d 371, 372). The power to make rules to establish, protect and strengthen family life is committed to the state Legislature by the Constitution of the United States (*Labine* v. *Vincent* (1971) 401 U.S. 532, 538 [28 L.Ed.2d 288, 293-294, 91 S.Ct. 1017]).

■ California has a substantial interest in the equitable division of marital property upon the dissolution of the marriage of its citizens (*In re Marriage of Freiberg* (1976) 57 Cal.App.3d 304, 310 [127 Cal.Rptr. 792]). The community property concept is an integral part of California's domestic relations laws (*Stone* v. *Stone*, 450 F.Supp. 919, 930). Such laws embody the intense local interest in the protection of a married woman's right to family property (*United States* v. *Yazell* (1966) 382 U.S. 341, 349 [15 L.Ed.2d 404, 408-409, 86 S.Ct. 535]). The interest of each spouse in the assets of the marital community are "present, existing and equal" during the continuance of the marriage (Civ. Code, § 5105). Upon dissolution each spouse possesses an equal and absolute right to one-half of the community property (Civ. Code, § 4800; *Meyer* v. *Kinzer and Wife, supra*, 12 Cal. 247, 252; *In re Marriage of Brown, supra*, 15 Cal.3d 838, 848). The division of community property by the court merely distributes that which each party already owns by virtue of the marriage relationship (*In re Marriage of Pilatti* (1979) 96 Cal. App.3d 63, 67 [157 Cal.Rptr. 594]).

Despite federal court decisions characterizing OASDI as a social welfare type of program, the fact remains that the statutory right to OASDI benefits is directly related to the years worked and the amounts earned by the covered employee, rather than to his or her need (*Weinberger* v. *Wiesenfeld, supra*, 420 U.S. 636, 647 [43 L.Ed.2d 514, 524]). Social Security is obviously more than an expectancy in some future beneficence. Although Congress may have the power to terminate OASDI benefits (see 42 U.S.C. § 1304), no one expects it to be exercised. The California Supreme Court held military retirement pensions subject to California property law in *Fithian, supra* (10 Cal.3d 592, 604), despite the fact "the federal government may increase, diminish, or completely abolish" the plan (*In re Marriage of Karlin* (1972) 24 Cal.App.3d 25, 30 [101 Cal.Rptr. 240]). The fact that Congress, in its discretion, may withdraw benefits at any time has no impact on the state's ability to characterize them for its own purposes under local principles of property law (*In re Marriage of Fithian, supra*, 10 Cal.3d 592, 602, fn. 14).

■ Other aspects of the noncontractual nature of OASDI have yet to be discussed by our state courts in the community property context. While there are numerous similarities between Social Security and private pension plans, there are also peculiarities in the statutory plan which make it impossible to characterize and divide the benefits as community property. For example, unlike other retirement systems, OASDI benefits are not proportionate to the duration of employment; the right to the benefits is based solely on the employee-spouse's final 40 quarters of employment. Presented with the situation of a retiring fulltime employee who has been involved in two marriages, the latter of which encompasses the last ten years of employment, we cannot say with certainty that the employee's first spouse is entitled to any benefits since they derive totally from the second marriage.

This problem (and similar examples discussed below) in identifying OASDI benefits as community property evidences more than mere administrative difficulties in distribution. It suggests Congress' intent to create a federal retirement benefit which is immune from division by state courts in marital dissolution proceedings.

*Federal Preemption*

■ State law which conflicts with a federal statute is invalid under the supremacy clause of the United States Constitution.[2] Other California Courts of Appeal have held California community property law conflicts with the Social Security Act and is preempted by the federal scheme for the protection of the worker's family (*In re Marriage of Kelley, supra*, 64 Cal.App.3d 82, 96; *In re Marriage of Nizenkoff, supra*, 65 Cal.App.3d 136, 140; *In re Marriage of Cohen, supra*, 105 Cal.3d 836, 843).

Congress acts against the background of state law (*Wallis v. Pan American Pet. Corp.* (1966) 384 U.S. 63, 68 [16 L.Ed.2d 369, 372-373, 86 S.Ct. 1301]). As discussed above, the whole subject of domestic relations is traditionally of local concern (*Buechold v. Ortiz, supra*, 401 F.2d 371, 372). ■ When state family law conflicts with a federal statute, preemption must be "positively required by direct enactment" of Congress (*Wetmore v. Markoe* (1904) 196 U.S. 68, 77 [49 L.Ed. 390, 394, 25 S.Ct. 172]), or must be the "clear and manifest" purpose of Congress (*Ray v. Atlantic Richfield Co.* (1978) 435 U.S. 151, 157

---

[2]Article VI, clause 2, of the United States Constitution.

[55 L.Ed.2d 179, 188, 98 S.Ct. 988]) as evidenced by an "actual conflict" between the state and federal law (*Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 141 [10 L.Ed.2d 248, 256, 83 S.Ct. 1210]), which does "major damage" to the "clear and substantial" governmental interests involved in the federal scheme (*United States* v. *Yazell, supra*, 382 U.S. 341, 352 [15 L.Ed.2d 404, 410]). Often courts will interpret federal statutes with the presumption Congress did not intend to interfere with the operation of state law (*Stone* v. *Stone, supra*, 450 F.Supp. 919, 924).

In the past, federal courts, finding preemption of state family law, have focused on specific provisions of federal legislation which conflict with community property concepts (see *Wissner* v. *Wissner* (1950) 338 U.S. 655, 658 [94 L.Ed. 424, 428-429, 70 S.Ct. 398]; *Free* v. *Bland* (1962) 369 U.S. 663 [8 L.Ed.2d 180, 82 S.Ct. 1089]).[3] For example, the Supreme Court in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 12-14, 99 S.Ct. 802, 809], found the Railroad Retirement Act (which is similar to the Social Security Act) preempts California community property law based primarily on provisions of the Railroad Retirement Act which preclude "anticipation" of retirement benefits (45 U.S.C. § 231m), terminate a secondary spousal annuity on divorce (45 U.S.C. § 231(c)(3)) and exclude community property claims from the support obligation enforceable through garnishment procedures against benefits payable to retired workers (42 U.S.C. § 662). The court concluded these provisions evidenced a congressional intent to subordinate state family law to the substantial federal interest in assuring rapid advancement of employees and more jobs for younger workers in the railroad industry.

---

[3]Professor Reppy has, through careful research, found several statutes which expressly exclude application of state community property law: "In I.R.C. § 219(c)(2), concerning deductions from gross income for deposits in IRA accounts by a wage earner, it is stated: '[T]his section shall be applied without regard to any community property laws.' Int. Rev. Code of 1939, ch. 619, § 402(b), 56 Stat. 942 (1942) (now, I.R.C. § 811(e)(2)), treated a decedent for estate tax purposes as owner of all his or her earnings or accumulation notwithstanding that by state law a surviving spouse owns a community half interest. This statute preempted the state law rule that one spouse had but a half interest in the community property by taxing the deceased 'to the extent of the interest therein held as community property by the decedent *and surviving spouse*...except such parts thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse.' (emphasis added.)

"I.R.C. § 911(c)(3), concerning exclusion from income of sums earned in foreign countries having community property systems, provides:

Only one of the provisions relied upon by the *Hisquierdo* court appears in the Social Security Act (i.e., 42 U.S.C. § 662). For this reason, that decision is not controlling in the instant case but does provide guidance for our holding. The enactment of a total OASDI family benefit scheme (42 U.S.C. § 402) does, in fact, suggest to us the presence of a similar congressional intent to replace state family law as it applies to Social Security. The spouse, dependent children, and even a divorced spouse of the retired employee may receive OASDI benefits in addition to the primary benefits. The amount of these family benefits are generally fixed at half of the primary benefits. Payment of the derivative benefits does not reduce those paid to the primary beneficiary, nor do

"[W]ith respect to amounts received for services performed by a husband or wife which are community income under community property laws applicable to such income, the aggregate amount excludable...from the gross income of such husband and wife shall equal the amount which would be excludable if such amounts did not constitute such community income. [¶] I.R.C. § 43(c)(2)(B)(ii) disregards community status and treats the acquiring spouse as sole owner for purpose of determining availability of earned income credit. I.R.C. §§ 1303(c) and 1304(c)(3)(B) disregard community property status in determining eligibility for income averaging. I.R.C. § 6013(e)(2)(A) disregards community property status in determining sums for which under some circumstances a nonearner spouse signing joint return which does not report all income is not personally liable.

"Such 'unequivocal mandates' to displace community property laws are found in the Social Security law itself with respect to certain narrow issues. *See*, e.g., Social Security Act § 211(a)(5)(A), 42 U.S.C. § 411(a)(5)(A) (1970). *See also* Treas. Reg. § 1.1402(a)-8 (1963), concerning when a self-employed persons earns fully insured status:

"If any of the income derived by an individual from a trade or business...is community income under community property laws applicable to such income, all of the gross income, and the deductions attributable to such income, shall be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control of such trade or business, in which case all of such gross income and deductions shall be treated as the gross income and deductions of the wife.

"The unconstitutional sex discrimination here in no way means this statute is not evidence of how Congress speaks 'with force and clarity' if it wishes to preempt community property laws.

"Additional regulations promulgated under the Social Security Act speak with force and clarity when preemption of community property laws is intended. 20 C.F.R. § 404.350(d) (1977), concerning how to measure the contributions from a deceased insured that a widower or parent must establish to qualify for benefits, states:

"'When a person receives, and uses for his support, income from his services or property and such income, under applicable State law, is community property of himself and his spouse, no part of such income is a "contribution" by the spouse to such person's support regardless of any legal interest the spouse may have therein. However, when a person receives, and uses for his support, income from the services or property of his spouse and, under applicable State law, such income is community property, all of such income is considered to be a contribution by such spouse to such person's support.'" (See Reppy, *Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 499-500, fn. 290.)

the divorced spouse's benefits reduce the amount payable to the present spouse. Family benefits protect the retired worker's family as a unit by increasing the level of total OASDI benefits (*Califano* v. *Goldfarb* (1977) 430 U.S. 199, 209 [51 L.Ed.2d 270, 278, 97 S.Ct. 1071], citing H.R. No. 728, 76th Cong. 1st. Sess. (1939) p. 7).

As suggested above, there are problems in defining the community interest of marital partners in these OASDI benefits. Close scrutiny reveals numerous such problems which are so complicated, and sometimes so absurd, as to lead one to the conclusion that Congress must have intended to designate OASDI beneficiaries exclusive of any state domestic law. For example, where the employee-spouse has been married twice, the second spouse may have a community property claim against the first spouse's benefits to the extent they derive from employment during the second marriage. Employee-spouse is married to spouse number one for five years, divorces, immediately marries spouse number two and then retires five years later. Spouse number two receives derivative benefits by virtue of his/her marital status at the time of retirement. Spouse number one would be excluded from participation in OASDI because he/she was married to the employee for less than ten years (42 U.S.C. § 402). May California courts award spouse number one half of the spousal benefits going to spouse number two, based on community property concepts?

Similarly, an employee-spouse may have a separate property claim to an ex-spouse's derivative benefits. Employee is married for most of his/her working life (more than 10 years), divorces and then retires 8 years later. An ex-spouse receives derivative benefits by virtue of his/her status at retirement. Since these benefits are based on the last 10 years of employment, however, the retired employee may have a separate property claim to a majority of this benefit.

Finally, it is apparent a community property claim may be sustained to deprive the dependent children of their derivative benefits. If one spouse is awarded custody of employee's dependent minor children and the children are receiving OASDI benefits which provide for their support, we can foresee the nonparental spouse claiming a share of those benefits to the extent they were derived from contributions made during her marriage. This would be contrary to congressional intent, we are sure.

■ These and other examples reveal substantial conflicts between California community property law and the OASDI family benefit plan which in certain situations could interfere with the stated purpose of Social Security. We are sympathetic to Tyna's contention that the federal scheme is, in some instances, less protective of the worker's family than the more comprehensive California community property law.[4] However, it appears Social Security has been structured so as to replace the diverse state law in the area (community as well as traditional domestic law) with a uniform federal system of distribution. It is not within our province to criticize the action of Congress.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

---

[4]For example, as stated above, an ex-spouse married to the employee-spouse for a period of less than 10 years would be excluded from participation in OASDI (42 U.S.C. § 402). Denial of California community property claim would leave that person without a judicially recognized claim to this asset.

We also note that although an ex-spouse receives OASDI benefits, it is not as much as he/she would receive under California law.