[Civ. No. 11272.   Third Dist.   Mar. 4, 1966.]

MARY C. CARLTON, Petitioner, v. SUPERIOR COURT OF BUTTE COUNTY, Respondent; HERBERT L. CARLTON, Real Party in Interest.

Miller & Frisch and Morton Frisch for Petitioner.

No appearance for Respondent.

Harold D. Hadley for Real Party in Interest.

FRIEDMAN, J.—Herbert L. Carlton filed a lawsuit in Butte County against his divorced wife. After an unsuccessful trial court motion the wife seeks mandate here to compel a change of venue to Los Angeles County, where she resides and where her interlocutory divorce decree was granted.

The decree, entered in March 1962, ordered Mr. Carlton to make monthly payments of child support and alimony. He moved to Butte County, where he owned or acquired interests in real estate. In August 1962 he filed a petition in bankruptcy and was granted a discharge.[1] Mrs. Carlton then recorded an abstract of judgment in Butte County, reciting that a court order had fixed $6,725 as the sum then due for child support and alimony. Mr. Carlton then filed the Butte County lawsuit. The complaint is in two counts, one for declaratory relief, the other seeking a decree quieting title to his land. The prayer of the complaint requests (a) a declaratory judgment establishing invalidity of the judgment lien and discharge of the underlying debt by bankruptcy, (b) an order restraining Mrs. Carlton from ''further harassment'' in connection with the discharged debt and (c) a decree quieting title.

A prologue discussing the impact of Mr. Carlton's bankruptcy upon his divorce decree obligations will help to develop

---

[1] Although the record is not clear, Mr. Carlton's real estate was apparently covered by a declaration of homestead.

the venue problem. ■ A discharge in bankruptcy does not release the bankrupt from an obligation for support of his wife or child; on the other hand, a liability for monthly payments to the wife entirely by way of a property settlement is discharged in bankruptcy. (*Yarus* v. *Yarus,* 178 Cal.App.2d 190, 195-196 [3 Cal.Rptr. 50], and authorities cited.) ■ If the divorce decree clearly fixes the nature of the obligation, the courts will not receive parole evidence to vary it; but if the parties' agreement embodied in a consent decree is ambiguous, then extrinsic evidence of intent is admissible to determine whether the decree orders (nondischargeable) support payments or (dischargeable) payments on account of a property settlement. (*Yarus* v. *Yarus, supra,* 178 Cal.App.2d at p. 203; *Fitzgerald* v. *Herzer,* 78 Cal.App.2d 127, 130 [177 P.2d 364]; see also 8B C.J.S., Bankruptcy, § 570, pp. 48-49.) ■ That the payments are designated "alimony" is a consideration in establishing intent but not controlling. (*Roberts* v. *Roberts,* 226 Cal.App.2d 507, 512 [38 Cal.Rptr. 176].)

■ The Carlton divorce decree[2] declared judicial approval of property and support provisions reached by oral stipulation of the attorneys for the parties. It distributed community property items between husband and wife; required the husband to pay to the wife $500 monthly "for her support and maintenance . . . and continuing until her death or remarriage;" awarded custody of the four children to the wife; ordered monthly payment of $450 for child support, and declared: "IT IS FURTHER ORDERED that the provisions for division of community property as stipulated herein and ordered by the Court, and for payment of alimony, are deemed to be part of an integrated property settlement agreement, and not subject to modification."

Considered alone, the provision awarding Mrs. Carlton $500 per month is an expression of the husband's obligation to support her. Regarded in isolation, the nonmodification clause points to these payments as a possible liquidation of property interests. These conflicting intendments in a single decree create an ambiguity which must be resolved with the aid of extrinsic evidence of the parties' intent. In the last analysis the effect of Mr. Carlton's bankruptcy on his obligation to

---

[2]The record does not include any reference to a final decree. Presence of a final decree, even one entered after the discharge in bankruptcy, would not significantly alter the situation. (See *Brink* v. *Brink,* 143 Cal. App.2d 527 [299 P.2d 991].)

pay $500 monthly to his wife can be established only by a factual inquiry and findings of fact by a trial court.

At this point we reach the venue problem. Mr. Carlton invokes article VI, section 5, of the State Constitution, which requires commencement of quiet title actions in the county where the real estate is situated. He urges that the main objective of his suit is a clear title to his Butte County real estate.

■ Article VI, section 5, is satisfied when an action is commenced in the county where the land is; thereafter, venue is governed by statutory rules. (*Cade* v. *Superior Court*, 191 Cal.App.2d 554, 557 [12 Cal.Rptr. 847].) ■ The lawsuit before us is actually a "mixed action" to which two conflicting venue rules apply. It is a local action to the extent that it attacks a claim of lien on real estate. It is an *in personam,* transitory action, because it would inevitably draw the court and parties into an adjudication of the nature of the "alimony" payments and their dischargeability in bankruptcy. That the Carlton complaint is drafted in the form of two separate counts is inconsequential. (See 1 Chadbourn, Grossman & Van Alstyne, Cal. Pleading, § 375, pp. 325-326.) Regardless of the form of his pleading, the plaintiff seeks two kinds of relief, one aimed at quieting title to real estate, the other aimed at the financial obligation created by the divorce decree. As a real estate action it is triable where the land is. As a transitory action it is triable elsewhere, either in the county where the defendant resides (Code Civ. Proc., § 395) or, conceivably, in the county of the divorce forum. Conflict between the divorce forum and the county of residence is academic here, since Mrs. Carlton resides in the county where the divorce was granted.

In resolving the venue problem in mixed actions, many decisions apply the venue standard appropriate to the "main relief" sought in the lawsuit. (See cases cited 1 Chadbourn, Grossman & Van Alstyne, Cal. Pleading, § 376, pp. 326-328; 1 Witkin, Cal. Procedure (1954) § 188, pp. 703-704.) Others look to the kind of inquiry the lawsuit poses for the trial court, classifying the action as local if title to real estate is the focus of trial and transitory if the inquiry deals primarily with financial obligations or personal relationships. (See *Neet* v. *Holmes,* 19 Cal.2d 605, 611-612 [122 P.2d 557]; *Los Angeles City School Dist.* v. *Redwood Empire Title Co.,* 206 Cal. App. 2d 398, 402 [23 Cal.Rptr. 662]; *Ponderosa Sky Ranch* v.

*Okay Improvement Corp.,* 204 Cal.App.2d 227, 230 [22 Cal. Rptr. 90].)[3]

As a practical matter, the dissipation of a cloud on his real estate is hardly a minor objective of Mr. Carlton's lawsuit. The fate of that cloud depends on the outcome of judicial inquiry into the nature of the alimony. Before he can quiet title the husband must establish that the alimony payments were designed only as a form of property settlement, discharged by his bankruptcy. The character of the alimony payments is the primary inquiry, the validity of the lien a secondary result. That primary inquiry is transitory, not local; hence the proper place of trial is the county of the defendant's residence. (Code Civ. Proc., § 395.)

The wife also asserts venue in Los Angeles County on the theory that the divorce forum has exclusive (or possibly, primary) jurisdiction to adjudicate the character of the payments directed by the decree, citing *Thomas* v. *Thomas,* 14 Cal.2d 355, 360 [94 P.2d 810]; also, on the theory that the county rendering a judgment has exclusive jurisdiction to cancel it following a discharge in bankruptcy, citing Code of Civil Procedure section 675b. These approaches raise interesting problems which we need not tackle, since the wife's residence county is the same as the county of the divorce forum.

Let a peremptory writ issue as prayed.

Pierce, P. J., and Regan, J., concurred.

---

[3]In selecting the statute of limitations appropriate to a "mixed" quiet title action, the Supreme Court observed that "the modern tendency is to look beyond the relief sought, and to view the matter from the basic cause of action giving rise to the plaintiff's right to relief." (*Leeper* v. *Beltrami,* 53 Cal.2d 195, 214 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803].) The remark has relevance to the location of trial as well as the time of suit commencement. The *Leeper* case has been cited as authority in classifying an action for venue purposes. (*Laurel Crest, Inc.* v. *Superior Court,* 235 Cal.App.2d 69, 74 [44 Cal.Rptr. 867].)