[Civ. No. 35892. Second Dist., Div. One. Sept. 14, 1970.]

DOLORES MILLER, Plaintiff and Appellant, v.
RAYMOND L. MILLER, Defendant and Respondent.

COUNSEL

Jack Ritter for Plaintiff and Appellant.

Loebl, Bringgold & Peck and William L. Peck for Defendant and Respondent.

OPINION

LILLIE, J.—This is an appeal by plaintiff from an order reducing monthly payments for alimony and support of two minor children, until further order of court. Defendant having sought such reduction on the ground of changed circumstances, the first question is whether the evidence supports the implied finding that his reduced finances warranted the reduction; the other issue raised by appellant relates to the trial judge's qualifications to participate in the matter in light of sections 170 and 170.6, Code of Civil Procedure.

It is conceded that there is statutory authority for the modification of an order for child support and alimony where there has been a change in conditions subsequent to the entry of the original award (Civ. Code, §§ 137, 139 [recodified and rewritten as §§ 4700 and 4801]). ██ Where, as here, the original award has once been modified, in any later modification proceeding the evidence must show a material change of circumstances subsequent to the last order. (*Evans* v. *Evans,* 185 Cal.App.2d 566, 570-571 [8 Cal.Rptr. 412].) But the governing rule on appeal remains unchanged. ██ Thus, whether the modification is warranted depends on the facts and circumstances of each case; an appellate court will not interfere with the trial court's action unless, as a matter of law, an abuse of discretion is shown; and any conflicts in the evidence or in reasonable inferences to be drawn from the facts will be resolved in support of the decision of the trial court. (*Dean* v. *Dean,* 59 Cal.2d 655, 657 [31 Cal.Rptr. 64, 381 P.2d 944].)

The parties were divorced in December of 1967 after a marriage of 16 years. By the interlocutory decree the provisions of which were made binding in the final decree entered in July of 1968, plaintiff was awarded certain community real property, a Cadillac and other personal property; defendant was given the remainder of the community real property, two cars and the business known as Ray Miller Construction Company. The interlocutory decree further provided for alimony payments to plaintiff at the rate of $175 per month plus payments of $300 each month ($150 per child) for the support of the two minor children. In April of 1968,

defendant sought modification and the above payments were reduced to $200 ($100 per child) for child support and $125 for alimony, the order of modification to remain in effect until June 1, 1969, when support would continue as originally ordered. ■ On June 30, 1969, by declaration dated June 14, defendant again moved for an order of modification; he stated that he had been unable to make the support payments due after May 15 of that year because he did not "have any money," and asked that alimony and child support be further reduced. After a hearing, the court impliedly finding a change in circumstances, further reduced defendant's payments to $60 per month per child and alimony payments to $1.00 per month; a motion for attorney's fees and costs was denied. It is from this order plaintiff appealed.

Defendant is a self-employed general contractor with a business office on East Main Street in Santa Paula where he also maintains his residence. He testified that his net income in 1968 was $3,357; in the first six months of 1969 he operated at a net loss of $12,934 (this figure was supplied him by his accountant); as a result, he was forced to discontinue his contracting business and seek employment as a carpenter; he is without bonding ability, has lost his insurance and is wholly without working capital; additionally, he is heavily in debt: there are loans outstanding on his East Main Street property and automobile, as well as personal loans taken out for living expenses and to meet the payments for alimony and child support.

On the other side of the coin, defendant is the owner of certain "speculation" property on Dana Drive in Santa Paula. While defendant testified that hopefully it could be sold for $30,000, there is $25,600 owing on the property. Much is made by plaintiff of the circumstances attending defendant's acquisition of this property resulting from the so-called "Scheidman job." Without going into detail, it appears that defendant acquired a lot next to the Scheidman property (where he did some work), built a house thereon and later sold it for a profit. Approximately $4,600, part of such profit, went into a down payment on the Dana Drive property; the whereabouts of the remainder of the profit consisting of a trust deed ($3,700) and approximately $4,900 in cash, remains somewhat obscure, although defendant testified that he borrowed $25,600 from a savings and loan company to build a house on the Dana Drive property (representing the loan against the property referred to above). While these were considered by both sides to be 1969 transactions for the purposes of the modification hearing, the trial court presumably took the position that any profit from the Scheidman job was swallowed up by the Dana Drive investment. If the latter property can hereafter be sold for more than defendant has put into it, such overage manifestly will be income. ■ As pointed out in a case cited by plaintiff, *Engelberg* v. *Engelberg,* 257 Cal.App.2d 821, 824 [65 Cal.Rptr.

269], the court in proceedings of this nature is not concerned with "merely a possibility which had not, and might not, occur." *Engelberg* also quotes the following (fn. 2, p. 825) from an early case which is here pertinent: "But the power to make such orders must be held to be limited to the conditions and circumstances existing at the time they are made. The court cannot then anticipate what may possibly thereafter happen, and provide for the future contingencies." (*Schammel* v. *Schammel,* 105 Cal. 258, 261 [38 P. 729].)

From the evidence before it, the trial court could reasonably conclude that the status of defendant's business and his economic situation otherwise, particularly the substantial outlays each month which matched (if they did not exceed) his limited income, required a temporary reduction in alimony and child support payments. Furthermore, plaintiff is not completely indigent; she is working part-time, has other income and is living in the home awarded her by the divorce decree. All the above circumstances do not indicate the abuse of discretion which will justify a reversal. Since it was also within the trial court's discretion to deny plaintiff's motion for attorney's fees and costs, that part of the order likewise cannot be disturbed.

Appellant's remaining point concerns the asserted disqualification of the trial judge (Judge Heaton) to hear the matter. Such contention is made for the first time on appeal.

The record discloses the following background facts: Plaintiff having filed her complaint on June 20, 1967, Judge Heaton presided at an order to show cause on July 3, 1967, at which time an order was made, pursuant to stipulation of the parties, relating to sums payable for alimony and child support; on September 13, 1967, a further order to show cause was heard by Judge Heaton and, again pursuant to stipulation of the parties, the earlier order of July 3 was vacated and defendant ordered to pay the sum of $500 monthly by way of alimony and child support. On October 13, 1967, Judge Heaton presided at a certain "settlement conference." The parties appeared through their present respective counsel and the minutes reveal "The conference was conducted but a settlement was not effected. The Court orders said matter continued until November 13, 1967 at 10 A.M. for further settlement and the trial date of December 8, 1967 at 9 A.M. is reserved. The Court further orders attorneys fees on account in the amount of $300 and costs on account in the amount of $42.50 payable by the husband to the attorney for the wife at the rate of $50 per month commencing forthwith and on the 15th day of each month thereafter." Another settlement conference was held by Judge Heaton on November 13, 1967, at which the trial date was reaffirmed. At a hearing presided over by Judge Lewis, on December 29, 1967, plaintiff secured an interlocu-

tory decree by default (defendant's cross-complaint and an answer thereto having been withdrawn by stipulation of the parties).

When defendant's first motion for modification was made in April of 1968, plaintiff challenged Judge Heaton's qualifications pursuant to section 170.6, Code of Civil Procedure; the hearing relative to modification was subsequently conducted by Judge Ruffner. When defendant's second motion to modify was filed the following year (1969), it was assigned for hearing to Judge Heaton with the determinations resulting in the present appeal. It appears that at no time was any objection made to Judge Heaton's participation in such hearing, although plaintiff continued to be represented by the same attorney who originally filed her complaint for divorce. Instead, as noted above, she now for the first time claims that Judge Heaton's decision, adverse to her cause, was void and in excess of his jurisdiction.

Citing numerous authorities, it is pointed out in *McClenny* v. *Superior Court,* 60 Cal.2d 677, 683 [36 Cal.Rptr. 459, 388 P.2d 691], that "a section 170.6 motion comes too late when filed after the judge has decided preliminary contested matters." In the present case, the two hearings on the order to show cause were not contested matters because, among other things, the parties stipulated to the matters therein resolved. (*Thompson* v. *Superior Court,* 206 Cal.App.2d 702, 709 [23 Cal.Rptr. 841].) In *Thompson* we thus quoted from a New Mexico case, *State* ex rel. *Shufeldt* v. *Armijo,* 39 N.M. 502 [50 P.2d 852, at page 856]: " 'The two orders relied on by respondent to preclude relator from filing an affidavit of disqualification were entered by consent of all parties to the action in the lower court. There had never been any adverse or favorable ruling on any contested or litigated motion, demurrer, or plea.' " (*Supra,* p. 710.) ▮ The question thus arises whether in the third hearing presided over by Judge Heaton, the "settlement conference," the award of attorney's fees (to which the parties did not stipulate) constituted an unfavorable ruling within the meaning of the case law on the subject. *McClenny* approvingly quotes the following from *Robinson* v. *Superior Court,* 186 Cal.App.2d 644, 649 [9 Cal.Rptr. 130]: "Parties claiming that a judge is disqualified cannot participate in a proceeding before him and, after they have lost the 'first round,' attempt to disqualify him as to the remaining 'rounds.' " Since plaintiff's complaint asked for reasonable attorney's fees and costs, it may well be argued[1] that such fees and costs were awarded and hence the ruling was not unfavorable; on the other hand, however, it might be urged that plaintiff's counsel was dissatisfied with Judge Heaton's views as to what were reasonable fees and costs. Furthermore, defendant's answer having denied the allegations of the

---

[1]Save for citation of sections 170 and 170.6, Code of Civil Procedure, plaintiff has referred us to no other authority.

complaint respecting attorney's fees and costs, the joinder of such issue by the above denials obviously made the matter a contested one even though its resolution was had at the "settlement conference" in question. The parties could have stipulated to fees and costs at the previous orders to show cause; their failure to do so left to Judge Heaton the determination of this contested issue.

Under all of the foregoing circumstances, we hold that plaintiff's motion under section 170.6 was not seasonably filed; as for her reliance on the other disqualification statute (§ 170), it will suffice to point out that the record is barren of any showing that she lodged with the court the required written statement setting forth the grounds of her claim to bias and prejudice.

The order is affirmed.

Wood, P. J., and Thompson, J., concurred.