[No. B001732. Second Dist., Div. Three. Oct. 29, 1985.]

In re the Marriage of PATRICIA G. and DONALD D. PAUL.
PATRICIA G. PAUL, Appellant, v.
DONALD D. PAUL, Respondent.

COUNSEL

Robert Mann for Appellant.

Donald D. Paul, in pro. per., for Respondent.

OPINION

KLEIN, P. J.—Appellant Patricia G. Paul (Wife) appeals from an order denying her an increase in spousal support payments from respondent Donald D. Paul (Husband), and from a denial of a motion for new trial.

Because the trial court abused its discretion, the judgment is reversed and the matter remanded.

### PROCEDURAL AND FACTUAL BACKGROUND

Wife and Husband were divorced in late 1978 after a marriage of over 17 years. The November 6, 1978, interlocutory judgment dissolving the marriage was based on a "marital settlement agreement" between the parties.

The judgment provided for monthly child support to be paid by Husband to Wife, the custodial parent, at a rate of $300 per minor child. At the time of the judgment, all three of the parties' children were under 18 years of age and resided with Wife. The judgment contained a spousal support order requiring Husband to pay $700 per month to Wife.

The judgment also contained a provision which permitted Husband to reduce his liability of $700 per month by $1 for every $2 of "net earnings" earned by Wife from employment, for that portion in excess of $400 per month. The provision defined "net earnings" as follows: "Net earnings for the purposes of this paragraph shall be defined as gross income less all legally required payroll deductions including, federal and state income taxes, social security and disability insurance, plus union dues, if required."

In May 1982, Husband filed an order to show cause requesting that Wife be ordered to reimburse Husband for overpayment of spousal support. The following month, Wife filed her own order to show cause requesting the amounts of child and spousal support be increased from their original level, set in the 1978 judgment.

On March 9, 1983, the trial court issued an order modifying the 1978 judgment. The order increased the amount of child support payable to Wife from $300 to $500, with respect to the one remaining child (Charles), until Charles attained the age of majority (Oct. 11, 1984). However, the level of spousal support was not increased and Husband was to be credited with a total of $12,187 against future spousal support obligations, as a result of previous overpayments made to Wife during the period between September 1979 through May 1982.

## CONTENTIONS

Wife contends the trial court abused its discretion by failing: (1) to take extrinsic evidence as to the parties' true meaning of the term "net earnings"; and (2) to consider Wife's expenditures on college tuition and related costs for her adult children as a factor in establishing her need for increased spousal support.

Husband controverts these contentions.

## DISCUSSION

1. *The trial court abused its discretion.*

(a) *The trial court should have entertained evidence as to an ambiguous term in the judgment.*

■ Before confronting the issue of what is required of a trial court when interpreting an ambiguous term of a judgment, a preliminary determination that an ambiguity exists is a necessary requisite. (*Lippman v. Sears, Roebuck & Co.* (1955) 44 Cal.2d 136, 145 [280 P.2d 775]; *Professional Bldg.*

*of Eureka, Inc.* v. *Anita Frocks, Inc., No. 6* (1960) 178 Cal.App.2d 276, 278-279 [2 Cal.Rptr. 914].)

In the instant case, there is ample evidence in the record that a patent ambiguity existed with respect to the meaning of the term "net earnings." One example is illustrated by the following colloquy between the trial court and Wife's attorney:

"Mr. Mann: The question now becomes: Does it not appear that definition of 'net earnings' pertains to a situation where Mrs. Paul is an employee? It refers only to withholding.

"The Court: Correct.

"Mr. Mann: Does it define what 'net earnings' are if Mrs. Paul is not an employee?

"The Court: That's correct; it doesn't.

"Mr. Mann: It doesn't. It seems to me that the judgment is silent as to what 'net earnings' are. If Mrs. Paul is not an employee; that is, if Mrs. Paul is an independent contractor which for purposes of this case always has been.

"The Court: That's correct."

█ Well-settled law establishes that appellate courts must refrain from interfering with the trial court's broad discretion to determine the proper amount of spousal support, and are loathe to reverse absent a showing of abuse of discretion. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 597-598 [153 Cal.Rptr. 423, 591 P.2d 911]; *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 119 [96 Cal.Rptr. 408]; *Miller* v. *Miller* (1970) 11 Cal.App.3d 197, 199 [89 Cal.Rptr. 643].)

█ However, in a case where, as here, a term of the judgment for dissolution is ambiguous and susceptible of more than one reasonable interpretation, the trial court is in error for failing to entertain extrinsic evidence in an effort to resolve the ambiguity. (*Carlton* v. *Superior Court* (1966) 240 Cal.App.2d 586, 588 [49 Cal.Rptr. 759]; *Emanuel* v. *Emanuel* (1975) 50 Cal.App.3d 56, 59 [123 Cal.Rptr. 249]; *In re Marriage of Sherman* (1984) 162 Cal.App.3d 1132, 1137-1138 [208 Cal.Rptr. 832].)

*Carlton* dealt with the question as to the nature of payments to the wife under a divorce decree. The *Carlton* court made the following determina-

tion: "[I]f the parties' agreement embodied in a consent decree is ambiguous, then extrinsic evidence of intent is admissible to determine whether the decree orders . . . support payments or . . . payments on account of a property settlement." (*Carlton* v. *Superior Court, supra,* 240 Cal.App.2d at p. 588.)

*Emanuel* involved another interpretation of a divorce decree. The decree approved a property settlement agreement between the spouses and ordered performance of its executory provisions. The *Emanuel* court stated: "[T]hat like any other contract which requires interpretation to ascertain the intent of the parties, an agreement such as the one here may require the resort to extrinsic evidence to determine the true intent of the parties." (*Emanuel* v. *Emanuel, supra,* 50 Cal.App.3d at p. 59.)

In the recent case of *In re Marriage of Sherman, supra,* 162 Cal.App.3d at pages 1137-1138, when confronted with the issue of modification of spousal support, the court expressly approved of the consideration of extrinsic evidence in the form of deposition testimony of the wife's counsel to find that the parties intended the wife's support payments to continue even after her remarriage.

Here, Wife sought to introduce extrinsic evidence at trial to support her contention that the definition of "net earnings," was applicable only if she were working as an employee, not as an independent contractor.

The trial court should have admitted Wife's proffered evidence, relative to the parties' true intent in formulating the underlying "marital settlement agreement," and the trial court's failure to do so was an abuse of discretion.

(b) *Wife's additional expenses caused by outlays for college education of their adult child should have been considered by the trial court in analyzing need for spousal support.*

Wife contends the trial court should have considered her expenditures toward college education for the parties' adult child when establishing Wife's need for increased spousal support. We agree.

Wife sought modification of the interlocutory judgment of dissolution to increase her amount of spousal support from Husband. Wife claimed a change of circumstances necessitated such an increase, in that she was paying for college related expenses for one of the parties' adult children. Because the child had reached age 18, Wife no longer received any child support from Husband, which support could have been used to help defray some of these additional costs. Husband refused to help the child in this

regard, but Wife continued to assist even though it placed a difficult financial burden on her.

■ The spousal support order is modifiable as to amount of payment. Civil Code section 4811, subdivision (b), provides that spousal support is always "subject to subsequent modification or revocation by court order, . . . except to the extent that any written agreement, . . . entered into in open court between the parties, specifically provides to the contrary." Here, the judgment expressly states that the amount of spousal support is subject to modification either by mutual agreement of the parties or by court order.

Thus, the trial court had the authority to modify the spousal support payments as warranted by the evidence. ■ However, the trial court's refusal to consider the educational expenditures by Wife for their adult child was an abuse of discretion.

In construing Civil Code section 4801, subdivision (a), which sets forth the relevant factors to be considered in making an award of spousal support, the California Supreme Court concluded "the term, 'circumstances,' 'includes "practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties."'"" (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41].)

In practice, courts have expressly considered the fact that the supporting spouse is paying for the college education of an adult child when determining that spouse's ability to pay spousal support to the supported spouse. (See, e.g., *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 90 [154 Cal.Rptr. 413, 592 P.2d 1165]; *In re Marriage of Kelley* (1976) 64 Cal.App.3d 82, 95 [134 Cal.Rptr. 259]; *Hall* v. *Hall* (1954) 42 Cal.2d 435, 441 [267 P.2d 249].)

Our Supreme Court in *Epstein* stated the "[h]usband's income is inadequate both to sustain two separate households at the standard of living previously enjoyed by the parties and to provide for the daughter's college education." (*In re Marriage of Epstein, supra,* 24 Cal.3d at p. 90.) The *Epstein* court concluded the trial court had not abused its discretion in limiting the husband's spousal support payments to $750 per month, in view of the fact that his monthly expenses totalled $1,750 per month, including $350 for the adult daughter's college education, while his monthly net income amounted to $2,600. (*Ibid.*)

In *Kelley,* the court held a modification of spousal support from $500 per month to $300 was justified by the trial court, due to the husband's expected

increased expenses flowing from the enrollment of a daughter in college. (*In re Marriage of Kelley, supra,* 64 Cal.App.3d at p. 95.)

It would be an anomaly for courts to entertain these expenses in the fact situations such as *Epstein* and *Kelley* as factors to be weighed when setting spousal support, and yet ignore such similar factors when it is the supported spouse who is expending monies on education of an adult child. "What's good for the goose is good for the gander," is quite apropos here. We find such inconsistency unacceptable and reject its further application to the instant case.

The record here shows the trial court was sympathetic toward Wife's position but determined it lacked precedential authority to make an order based upon her contributions toward the support and maintenance of an adult child. In addition to the foregoing, the following authority also supports our position.

In the case of *In re Marriage of Siegel* (1972) 26 Cal.App.3d 88, 90 [102 Cal.Rptr. 613], the husband appealed the trial court's increase of spousal support to the wife on the basis that the modification order considered the wife's increase in expenses attributable to the fact that she was caring for their adult daughter and granddaughter.

The *Siegel* court pointed out that the trial court expressly noted its lack of authority to require the husband to support his adult daughter and granddaughter directly. However, it recognized the wife's moral and social obligation to her progeny and concluded this was a circumstance it could legitimately consider in determining the wife's need, and the amount her former husband should pay for *her* support. (*Id.,* at p. 93.) The trial court order included the following realistic observation, " 'The [wife] will be naturally inclined to short herself and the younger boys if not given additional help to support the adult daughter and grandchild.' " (*Id.,* at p. 91.)

The *Siegel* court further elaborated: "Fulfilling her maternal obligation is a commendable part of her way of life just as much as entertaining her friends, contributing to worthy charitable causes or giving presents to her relatives on their birthdays, at Christmas or other memorable occasions. (Gen. see *Anderson* v. *Anderson,* 124 Cal. 48, 54, 55 [56 P. 630, 57 P. 81].)" (*Id.,* at p. 93.)

The same rationale is applicable to this case. Wife's choosing to spend money to educate her adult children, even though not legally obligated to do so, is not only justified but is also morally commendable.

This decision recognizes that the trial court must continue to weigh all relevant factors and circumstances as proscribed by statute when making an award of spousal support. In the present case, it is relevant that Husband is a lawyer, that Wife is also a well-educated working woman, and that the importance of college education in today's society is known to them. It is relevant to consider the standard of living to which the parties are accustomed, and that Wife seeks additional spousal support not for silly whims or fanciful pursuits, but for the education of their children.

Because the trial court failed to weigh the fact that Wife was making legitimate educational expenditures which would necessarily impact upon her need for spousal support, we find the trial court abused its discretion.

### DISPOSITION

The judgment is reversed and remanded for proceedings in accordance with this opinion.

Wife is entitled to costs on appeal and may apply to the trial court for an award of attorney's fees.

Lui, J., and Arabian, J., concurred.