[No. A048447. First Dist., Div. Two. Oct 1, 1991.]

In re the Marriage of STEPHEN and JILL WEINSTEIN.
STEPHEN WEINSTEIN, Respondent, v.
JILL WEINSTEIN, Appellant.

## Counsel

Kaduchin, Fancher & Wickland, Paige Wickland, Shapiro & Thorn and Suzie Thorn for Appellant.

Steven Hallert, De Goff & Sherman and Richard Sherman for Respondent.

## Opinion

**KLINE, P. J.**—Jill Weinstein appeals from the judgment in an action for dissolution of marriage awarding her $8,500 per month in spousal support. Appellant contends the award must be reversed because the trial court employed an erroneous definition of marital standard of living, failed to award sufficient support to satisfy the need it determined to exist and refused to order retroactive support payments.

### Statement of the Case

On February 18, 1987, after 21 years of marriage, respondent Stephen Weinstein filed a petition for dissolution of marriage. Marital status was terminated on February 3, 1988. On February 5, the parties stipulated that respondent would pay appellant temporary support of $2,000 per month in order to allow him to deduct the support for tax purposes, noting that this was not a determination of the proper amount of support. On May 18, the parties agreed that respondent would pay appellant an additional $6,000 for the month of April and a total of $7,500 for each month thereafter, plus

$1,000 per month for a four-month period to cover moving expenses, reserving all rights to argue the sufficiency of this support order. Appellant was allowed exclusive use of the parties' vacation home in Palm Springs without prejudice to respondent's right to request other dispositions at trial.

On May 27, the court entered orders pursuant to the parties' agreement providing among other things for division of respondent's two pension plans 48 percent to respondent and 52 percent to appellant, award of all proceeds of the sale of the family residence to appellant as her separate property, payment of attorney fees and costs through May 2 by the party incurring the expenses, award of three partnerships to respondent as his separate property and equal division of seven others for tax purposes. This stipulation further provided that the court would have jurisdiction to award spousal support retroactive to the month of April 1988 and thereafter only.

At trial, which was held on June 1, 2 and 5, 1989, appellant requested permanent spousal support of $14,000 a month, award of the Palm Springs property to her, orders that respondent maintain a $1 million life insurance policy with her as the beneficiary and pay taxes on the spousal support payments she had received prior to trial, and attorney fees and costs. Respondent contested each of these requests, specifically contending appellant should be awarded $8,425 monthly spousal support and be required to submit a plan for education and/or employment, and the Palm Springs residence should be sold.

At the conclusion of trial, both parties requested a statement of decision. On July 13, the court filed its notice of intended decision ordering sale of the Palm Springs home (with an option for appellant to purchase it), setting permanent spousal support at $8,500 per month beginning in August 1989, with no requirement that appellant seek employment, and requiring respondent to maintain a $1 million life insurance policy at least until appellant begins to receive income from the previously divided retirement plans.

On December 13, 1989, after submission of proposed statements of decision by both parties,[1] the court adopted its original notice of intended decision as its statement of decision and filed the judgment. Appellant's notice of appeal was filed on January 25, 1990.

---

[1]Appellant filed a formal request for statement of decision and objections to notice of intended decision on July 24. On August 17, the court ordered respondent to prepare a statement of decision. On September 19, respondent having failed to submit the document, appellant submitted a proposed judgment and statement of decision, along with objections thereto. Respondent then filed a proposed statement of decision on October 1, to which appellant objected; respondent's argument in opposition to these objections and proposed order apparently were not file stamped.

## STATEMENT OF FACTS

The parties were married on December 18, 1965, and separated on February 4, 1987. At the time of trial, their older son, Bradley, was 19 years old and lived with respondent, and their younger son, Kevin, was about to turn 18 and lived with appellant.

Respondent, an obstetrician, has been employed by Contra Costa OB-GYN, a medical corporation, since July 1973. His gross income for the years 1981 through 1986 ranged from a low of $322,841 to a high of $444,723, with net income of $218,909, $274,153, $232,487, $286,626, $281,269, and $317,870 for the successive years. His gross income in 1988 was $530,000. Respondent estimated he worked close to a hundred hours a week.

Appellant worked as a secretary for the first three and a half years of the marriage, and did not work for compensation after that time. She was actively involved in volunteer work for Jewish and hospital-related organizations, spending as much as 30 hours a week on these activities.

Respondent testified that the parties enjoyed a high standard of living during their marriage: They lived in a large house, owned three cars (a Cadillac, a Mercedes and a Jeep at the time of separation), attended shows, went out to dinner, and took trips together, and appellant travelled with friends or alone. Respondent testified that they travelled "comfortably." On airplanes, appellant sometimes travelled first class while respondent was in coach. Respondent felt appellant spent too much money on clothes, testifying that she did not wear all the ones she bought and gave some away with tags still on. The couple made considerable charitable donations. They had no savings during the marriage.

Appellant testified that during the marriage she had a housekeeper five days a week as well as a weekly gardener and pool service man. She described more frequent and extensive entertaining than did respondent, including annual parties of 50 to 80 people. For respondent's 40th birthday party, the couple took 18 friends to Disneyland for a weekend at a cost of approximately $9,000. Appellant felt her charitable activities and entertaining helped respondent's career, noting a provision of respondent's contract that they were to entertain for the goodwill of the corporation. Appellant also described more extensive and expensive family and personal travel during the marriage than respondent had described. She estimated that the parties' collection of fine art and rare books was worth $60,000 to $80,000, testified that respondent gave her numerous gifts of expensive jewelry and described major charitable donations of $75,000 plus additional gifts of $500 or

$1,000. Appellant testified she did not know the couple's level of expenditures was causing financial difficulty until the marriage was over. In January 1988, appellant wrote respondent a letter in which she indicated she would not have spent as much money if he had let her know the true financial picture.

After the parties separated, the family home, a 5-bedroom, 35,000-square-foot house with a swimming pool, was sold for $644,000. There were three mortgages or deeds of trust against the home and the proceeds of the sale, $160,000, went to appellant. Respondent remarried on May 28, 1988, and bought a new home in Walnut Creek for $342,000, where he lived with his new wife, her three children and his older son. His new wife had no income.

After sale of the family residence, appellant moved into a rented condominium. She testified she was barely able to live on the $2,000 a month respondent was giving her after they separated and borrowed about $22,000 to $25,000 from her father and $10,000 from a bank; during this time, respondent was paying the house, medical, car and children's educational expenses. She paid her attorney fees through May 1988 from the proceeds of the sale of the family home. The $7,500 per month she had been receiving since May 1988 was insufficient to cover her expenses and she had had to pay from other sources her taxes, health insurance, the mortgage on the Palm Springs home, the premium on appellant's life insurance policy and her attorney fees. Appellant had a 50 percent interest under a living trust, in a building in Seattle worth more than $1 million, but all the income from the building went to her father as life beneficiary. She had three herniated discs which caused her discomfort if she sat for too long.

John Mangini, respondent's financial expert, prepared an "Analysis of Spendable Income" to reflect the income the Weinsteins had available for the years 1984 through 1986 for living expenses other than housing, property taxes and education (e.g., food, clothing, utilities, personal grooming and vacations). Mangini deducted certain amounts from respondent's income for these years, including taxes withheld, property taxes, business expenses, individual retirement account (IRA) contributions and private school tuition, averaged the figures for the three years and divided by the number of people in the household to arrive at a figure of $3,028 per person per month for what the Weinsteins' expenditures should have been. He did not include expenses paid by borrowing and did not analyze the parties' checkbooks or deposit registers. Mangini also prepared an analysis of net income for the years 1981 through 1986 which showed an average monthly net income of $22,000.

Appellant's expert, Lionel Engelman, based his analysis of the marital standard of living on a review of check registers for six months in 1986

which he felt were representative of the parties' actual expenditures. He found average monthly expenditures of $29,951. Engelman conceded that the Weinsteins were living above their means in 1986.

Engelman further determined that appellant's average monthly expenditures from May 1988 through April 1989 were $10,222 and that appellant would need to receive $14,000 a month gross spousal support to net $10,000. Appellant's income and expense declaration claimed $14,298 monthly expenses for herself and her son Kevin.[2]

Engelman also examined the effect on respondent's financial situation of paying different amounts of spousal support. Assuming respondent's 1987 income ($428,000) and accounting for taxes, Engelman concluded that if respondent paid $12,000 monthly spousal support he would be left with net spendable income of $17,423; if he paid $14,000 he would retain $16,117; and if he paid $16,000 he would be left with $14,800.[3] Assuming respondent's 1988 income, respondent could pay $12,000 support and be left with $23,609, 72.7 percent of the after-tax spendable income. If he paid $14,000, he would be left with $22,203, 68.7 percent of the net spendable income. Respondent's expense sheet showed monthly expenses of $16,237 for himself, his son Bradley, his new wife and three stepchildren.

## Discussion

■ Civil Code section 4801 authorizes a trial court to order spousal support "for any period of time, as the court may deem just and reasonable, based on the standard of living established during the marriage." In making the award, the court is required to consider nine specifically enumerated

---

[2]In addition to expenses for items such as rent, utilities, transportation, taxes, insurance, household maintenance, and food ($4,588), the declaration listed monthly amounts of $840 for clothing, $370 for child care, $1,110 for entertainment and travel, $750 for loan repayments to appellant's father, $1,500 for maintenance of the Palm Springs home, $190 for personal grooming, $400 for gifts and contributions, $4,300 for income tax and $250 miscellaneous. Appellant had not been repaying the loan to her father. Kevin was about to turn 18 years of age and respondent testified he was paying most of Kevin's expenses. Respondent had paid medical expenses of $24,000 in 1988-1989 to treat Kevin's drug problem and projected paying $20,000 in the future for Kevin's educational expenses. Respondent contended the Palm Springs home should be sold because an equivalent unit could be rented for $1,500 a month and the home was used only for vacations (during the marriage, a maximum of two to three months a year). The condominium had decreased in value and the Weinsteins had no equity in it.

[3]Since Engelman's analysis was performed when respondent was single, it assumed single taxpayer filing status. Engelman testified that if it were adjusted for married filing status, given that respondent's present wife had no income, respondent's net spendable income would be somewhat higher.

factors and any others it deems "just and equitable." (§ 4801, subd. (a).)[4] While the trial court is bound to consider these guidelines, " 'the ultimate decision rests within the court's "broad discretion." A trial court's exercise of discretion will not be disturbed on appeal unless, *as a matter of law*, an abuse of discretion is shown—i.e., where, considering all the relevant circumstances, the court has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances. [Citations.]' " (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 479-480 [274 Cal.Rptr. 911], quoting Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1989) ¶ 6:79, p. 6-96.14, italics in original.)

In its statement of decision, the trial court stated that spousal support of $8,500 per month was "consistent with the party's lifestyle during marriage." The statement of decision notes four factors that were specifically considered in setting the amount of support: That appellant could live well on a net income of $5,500 and had done so on less between February 1987 and April 1988; that respondent had been and would be contributing heavily to the education of the parties' sons and would not expect appellant to do so; that appellant's expense itemization included extravagant and nonexistent items; and that appellant had some minor income beyond spousal support.

---

[4]The factors the trial court is required to consider are as follows:
" . . . . . . . . . . . . . . . . . . . . . .
"(1) The extent to which the earning capacity of each spouse is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:
"(A) The marketable skills of the supported spouse; the job market for those skills; the time and expenses required for the supported spouse to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.
"(B) The extent to which the supported spouse's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties.
"(2) The extent to which the supported spouse contributed to the attainment of an education, training, a career position, or a license by the other spouse.
"(3) The ability to pay of the supporting spouse, taking into account the supporting spouse's earning capacity, earned and unearned income, assets, and standard of living.
"(4) The needs of each party based on the standard of living established during the marriage.
"(5) The obligations and assets, including the separate property, of each.
"(6) The duration of the marriage.
"(7) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.
"(8) The age and health of the parties.
"(9) The immediate and specific tax consequences to each party.
"(10) Any other factors which it deems just and equitable." (§ 4801, subd. (a).)

## I.

Appellant's main contention is that the trial court erred in defining the marital standard of living by reference to the parties' income during marriage rather than their actual expenditures and in failing to consider respondent's higher postseparation income in setting the amount of spousal support. She urges that *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351 [236 Cal.Rptr. 543] measured the marital standard of living by reference to expenditures and does not preclude consideration of an increase in the supporting spouse's income after separation.

*Hoffmeister* involved a wife's request for modification of spousal support five months after entry of an interlocutory judgment on the grounds that the husband's income had increased and her needs, measured by the marital standard of living, remained unmet. The court held that when a request for modification of support is based on an increased ability to pay, the supported spouse must also show that his or her needs at the time of separation were not met. (191 Cal.App.3d at p. 364.) The record did not support the trial court's order of modification because there was no finding of unmet needs in the original support order and the wife's failure to provide evidence of her own or the parties' expenditures during marriage precluded the trial court from finding unmet needs at the time of separtion. (*Id.*, at pp. 360-363.)

As applied to an original order for spousal support rather than a modification, *Hoffmeister* indicates that if the supporting spouse has the ability to pay, support should be ordered at a level sufficient to allow the supported spouse to maintain the marital standard of living. While the court referred to the parties' expenditures during marriage as the measure of their standard of living (191 Cal.App.3d 351, 362-363), we are aware of no rule requiring that standard of living be defined by actual expenditures in all cases. As explained in the recent case *In re Marriage of Smith, supra*, the marital standard of living "is a general description, not intended to specifically spell out or narrowly define a mathematical standard." (225 Cal.App.3d at p. 491.) *Smith* defined marital standard of living as "reasonable. needs commensurate with the parties' general station in life." (*Ibid.*) While it noted that "the reference point is usually the *actual* marital standard of living, that is, actual expenditures during the marriage" (*id.*, at p. 484), *Smith* cautioned that standard of living is neither a "floor" nor a "ceiling" for spousal support but "merely a 'basis' or reference point for determining need and support." (*Ibid.*) In that case, because the husband had worked unreasonable hours during the marriage and the couple had lived beyond their means, the court found the actual marital standard of living had "reduced significance as a point of reference in determining [the supported spouse's] reasonable needs

and support" and was eclipsed by "what would have been a reasonable standard of living." (*Id.*, at pp. 485-486.)

■ In the present case, the trial court was presented with two measures of the marital standard of living: actual expenditures during six "representative" months of the last year of marriage and average income over the last six years of marriage. Given the evidence that at times the parties lived beyond their means, the court's decision to base the award on the parties' average income cannot be viewed as an abuse of discretion. Appellant's evidence showed average monthly expenditures during marriage of $29,951, well more than the parties' average monthly income of $22,000 during the last six years of marriage and $25,000 during the last two years. Despite respondent's very high income, the parties had no savings during the marriage and realized only $160,000 profit from the sale of their home for $644,000. In these circumstances, the trial court could well have determined that the parties' actual expenditures were not reasonable and turned to income as the only available measure of standard of living. Contrary to appellant's suggestion, the court was not required to maintain an overextended lifestyle based heavily on borrowing.[5]

■ Nor was the trial court required to consider respondent's postseparation income in determining the level of appellant's support. *Hoffmeister* stands for the proposition that an increase in postseparation income may be considered for purposes of bringing the supported spouse's level of support up to that necessary to maintain the parties' marital standard of living. Where, as here, an award based on marital income level is sufficient to maintain the marital standard of living, there is no occasion to draw upon postseparation income. "It is [appellant's] needs which must be examined, not [respondent's] standard of living due to post-separation separate property earnings." (*In re Marriage of Smith, supra*, 225 Cal.App.3d at p. 487.)

Appellant's reliance upon *In re Marriage of Fransen* (1983) 142 Cal.App.3d 419 [190 Cal.Rptr. 885] is misplaced. In that case the court apparently determined the amount of spousal support solely on the basis of the difference between the wife's monthly expenses and her monthly income. Condemning this "mechanical application" the appellate court emphasized that the trial court "must not limit itself to an award based entirely

---

[5]Appellant urges that this case does not fit within the *Smith* " 'reasonable lifesyle' rule" because the trial court did not make a finding that the parties here were living beyond their means. We do not read *Smith* as holding that the marital standard of living must be measured by actual expenditures in all cases except those in which the parties are explicitly found to be living beyond their means but as more generally establishing that the definition and significance of marital standard of living may vary depending on the circumstances of a given case. That the trial court did not anticipate the *Smith* holding and make a finding that would bring this case squarely within it does not alter the fact that its decision to consider the marital standard of living as defined by the parties' income was within its discretion.

upon need." (*Id.*, at p. 425.) The trial court "completely frustrated the design and purpose of section 4801, subdivision (a)" by effectively ignoring "the Fransen's respective earning capacities, their station in life, Mrs. Fransen's educational and work skill background, and the duration of the marriage." (*Ibid.*) In the present case, the record regarding the court's evaluation process reveals that these factors *were* considered; that is, the court's finding was not made exclusively on the basis of need or any other single factor. Nor did appellant at trial claim otherwise.

Appellant relies upon *In re Marriage of Smith & Ostler* (1990) 223 Cal.App.3d 33 [272 Cal.Rptr. 560] to argue that an award based on average marital income deprives her of the benefit of the family's upward mobility. In that case, the trial court found the marital standard of living (for a family of six) had been supported by an average net income of $6,000 per month in the last seven years of the marriage and ordered $5,900 support for the wife and two minor children, plus a percentage of the husband's future bonuses, for a period of three years. (*Id.* at pp. 41-42.) Rejecting the husband's contention that spousal support cannot exceed the amount necessary to support marital standard of living, the reviewing court noted that defining that standard of living by average income did not account for the family's upward mobility (*id.*, at pp. 41, 48) and held it unjust to leave the custodial parent and minor children at a significantly lower plateau of living while the noncustodial parent enjoys a significantly increased income. (*Id.* at p. 48.) The husband's income for the years in question had risen from $64,504 in 1979 to $215,004 at separation in 1985 and $300,000 at the time of the hearing in 1988. (*Id.*, at pp. 38, 48.)

In the present case, while respondent's income has increased since separation, it has not been at the same order of magnitude as that of the husband in *Smith & Ostler*. Perhaps more significantly, the order in *Smith & Ostler* contained an automatic step-down provision reducing all spousal support to $1 per year in three years. (223 Cal.App.3d at p. 42.) By contrast, the trial court here ordered permanent support of $102,000 a year for appellant alone, with no requirement that she attempt to become self-supporting. In this context, the trial court did not abuse its discretion in declining to base the support award on respondent's postseparation income.

Appellant's next contention, that spousal support based on average marital earnings does not account for inflation, is unavailing.[6] Appellant did not raise the issue of inflation in the trial court or present evidence of the amount of inflation which had occurred during the years considered by the

---

[6]Appellant complains that an award based on average marital earnings relegates her to an income which will never rise commensurate with increases in the cost of living.

trial court. Having failed to raise this issue in the trial court, she is precluded from claiming it as error on appeal. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 316, pp. 327-329; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1990) ¶ 8:229, p. 8-54.)[7]

Appellant's argument that the trial court ignored respondent's ability to support both households in the marital standard of living (see § 4801, subds. (a)(1) and (a)(3)) fares no better. The trial court explicitly considered respondent's "very large income" in making its award but determined that her claimed expenses exceeded a reasonable standard of living for the parties' income. It simply disagreed with appellant's assertion that an award of $14,000 was necessary to maintain the marital standard of living.

■ Nor can we accept the contention that the trial court ignored the tax consequences to each party. (§ 4801, subd. (a)(9).) The court directly accounted for appellant's taxes by awarding $8,500 in order to allow appellant the $5,500 support it deemed reasonable. The primary question in this case was not respondent's ability to pay but definition of appellant's reasonable needs. As long as the support ordered was sufficient to allow appellant a standard of living consistent with a reasonable view of her marital standard of living, the fact that respondent would be left with more spendable income as a result of his tax deduction is not relevant.

■ As for appellant's argument that it is improper to leave the parties with unequal standards of living, we agree that it would be an abuse of discretion to order support which leaves the supported spouse at a standard of living significantly lower than that enjoyed during marriage while allowing the supporting spouse a significantly higher one. (*In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 671 [143 Cal.Rptr. 94]; *In re Marriage of Ramer* (1986) 187 Cal.App.3d 263, 273 [231 Cal.Rptr. 647].) If the supported spouse receives an amount sufficient to maintain the marital standard of living, however, the fact that postseparation earnings allow the supporting spouse to maintain a higher one does not invalidate the award. (See *In re Marriage of Smith, supra,* 225 Cal.App.3d at p. 487.)[8]

■ Appellant is also incorrect in stating that a trial court abuses its discretion by determining what a reasonable marital lifestyle would have

---

[7]This does not mean appellant is necessarily precluded from having her award modified to account for inflation subsequent to trial. Civil Code section 4801.9 provides a simplified method for modification of spousal support awards which includes a specific authorization for cost of living increases. (See also, *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1172, fn. 7 [208 Cal.Rptr. 345] [significant inflation as changed circumstance].)

[8]As a factual matter, it is not clear that appellant's portrayal of respondent as immediately returning to the lavish marital standard of living is accurate. Appellant's main complaint

been rather than abiding by the standard of living reflected in actual expenses. As explained above, where parties live beyond their means during marriage, the appropriate measure of their postseparation needs is "what would have been a reasonable standard of living" if they had not been doing so. (*In re Marriage of Smith, supra*, 225 Cal.App.3d at p. 493.) Like the wife in *Smith*, appellant chose to present only evidence of actual expenditures during marriage at trial and none on what might be viewed as reasonable standard of living. (*Id.*, at p. 486.) As in *Smith*, this may have been a sound trial tactic for purposes of seeking to obtain the greatest amount of support, but it now precludes appellant from challenging the court's determination, supported by the evidence of the reasonable standard of living. (See, *id.*, at p. 486.)

■ We simply cannot hold that an award of $8,500 per month was an abuse of discretion. The trial court was not required to accept appellant's claimed expenses, as trial courts must "remain ever vigilant to exaggeration and falsification." (*In re Marriage of Hoffmeister, supra*, 191 Cal.App.3d at p. 362.) The court properly considered the fact that respondent would be paying for the parties' sons' education (see *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 90 [154 Cal.Rptr. 413, 592 P.2d 1165]; *In re Marriage of Paul* (1985) 173 Cal.App.3d 913, 919-920 [219 Cal.Rptr. 318, 63 A.L.R.4th 427]), as well as that appellant had a small amount of income from other sources. The award was highly favorable to appellant in that it imposed no requirement upon her to contribute to her own support.

Appellant argues the trial court's finding that she lived well on less than $5,500 a month in the period after separation is not supported by the evidence. Appellant testified that during this period she was receiving $2,000 a month from respondent and $2,200 in borrowed funds while respondent was paying her housing, automobile, and medical expenses as well as the children's educational expenses. According to appellant, accounting for the expenses respondent was paying by adding the relevant amounts from her income and expense declaration, she was living on $7,060 a month. It is not clear exactly which expenses appellant is adding to reach this total (addition of the listed amounts for rent, medical and transportation yields a total of $6,760), but in any case the trial court was not required to view the amounts she specified as reasonable. Moreover, the $1,500 appellant was spending each month to maintain the Palm Springs residence was an expense which would not exist under the court's order to sell that property. Even accepting appellant's calculations, subtraction of the $1,500 would indicate living

seems to be that respondent bought a new home while she lives in a rented condominium. Respondent's new home, however, cost $342,000 as compared to the parties' home which sold for $644,000.

expenses of $5,560. Since the court's statement that appellant lived well on $5,500 a month was only one of the factors upon which its decision was based, any slight error in the court's calculation in this regard does not undermine the award.

 Appellant also urges the trial court abused its discretion in awarding spousal support commencing August 1, 1989, rather than retroactive to May 1988. The court did not explain its reasons for this order. As the parties apparently did not specifically request the court to address the issue of retroactivity in its statement of decision or object to the absence of an explanation for the order, this court will indulge the presumption in favor of the correctness of the judgment and imply findings to support the judgment. (*In re Marriage of Arceneaux* (1991) 51 Cal.3d 1130, 1133-1134 [275 Cal.Rptr. 797, 800 P.2d 1227]; *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1274 [255 Cal.Rptr. 488].) The court was presented with and obviously rejected appellant's evidence that she was unable to live on the $7,500 spousal support she was receiving between May 1988 and entry of the new support order. We find no abuse of discretion.[9]

## II.

Appellant's final contention, that the trial court's support award is insufficient to cover the need expressly found by the court, addresses an inconsistency in the statement of decision. The court specifically reduced certain of appellant's claimed expenses: It found her claimed monthly clothing expense extravagant and beyond her marital standard of living by $500, found she had no child care expense of $370 or real debt to her father of $750 that could not be paid from her trust account, found the amount reserved for income tax high and covered by the court's allowance of $3,000 for taxes, and noted that sale of the Palm Springs condominium eliminated this expense while the claimed monthly $1,110 entertainment and travel allowance would cover any Palm Springs rental. The court then stated that after adjustment, support of $8,500 would leave appellant with an approximately $1,500 monthly "cushion."

Appellant correctly points out that if the amounts specified by the court are subtracted from her total claimed expenses of $14,298, the new total is $9,878. The award of $8,500 is obviously insufficient to cover expenses of $9,878, much less provide a $1,500 "cushion" for additional expenses. Respondent urges us to ignore this inconsistency, suggesting that because the court made clear its intent to award appellant a net sum of $5,500 we can

---

[9]It may also be noted that respondent spent $24,000 on medical expenses for the parties' son during this period.

view the court's list of deductions as illustrative rather than exhaustive. The language of the statement of decision, however, does not support this interpretation. Rather than presenting an illustrative list of alterations to appellant's expenses, the court enumerated certain items and specifically purported to adjust appellant's expense itemization in accordance with them. There is no indication it found any other expenses improper. The court's reference to a defined amount of "cushion" remaining after such adjustment further indicates the list was not meant as simply illustrative: If the list was only illustrative, the court could not know $1,500 would be left after accounting for all of appellant's expenses.

 It thus appears that the calculation the court stated it had specifically considered in setting the amount of support is irreconcilable with the amount actually ordered.[10] Appellant brought this discrepancy in numbers to the trial court's attention. Under Code of Civil Procedure section 634, when an omission from or ambiguity in a statement of decision is brought to the trial court's attention prior to entry of judgment, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (*In re Marriage of Arceneaux, supra*, 51 Cal.3d 1130, 1133.) Accordingly, despite our view that the award of spousal support was well within the trial court's discretion, we have no choice but to remand for the trial court to clarify its statement of decision.

The matter is remanded for further proceedings in accordance with the views expressed herein. Appellant shall recover her costs on appeal.[11]

Benson, J., and Peterson, J., concurred.

---

[10]A possible computational error appears on the face of the statement of decision: If the court subtracted from appellant's expense declaration the full amount she claimed as a reserve for taxes ($4,300) rather than the difference between what she claimed and what the court felt sufficient ($1,300), the result would be $6,878, $1,622 less than the amount of support ordered. In approximate terms, this would explain the court's statement that its award of $8,500 allowed appellant a $1,500 "cushion" for additional expenses. Contrary to appellant's characterization, we do not view the statement of decision as indicating the "intent" to allow her a $1,500 "cushion," but simply as acknowledging the existence of such a cushion under its (mistaken) calculation.

[11]As appellant has made no request for attorney fees on appeal, we decline to address respondent's claim that she is not entitled to any.